**Herbert Lindsey BEY, a/k/a Herbert D. Lindsey, Jr., Defendant Below, Appellant,**

v.

**The STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted Jan. 8, 1979.

Decided April 17, 1979.

James A. Walsh and Dennis M. McBride, Wilmington, for defendant below, appellant.

Norman A. Barron, Chief Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

McNEILLY, Justice:

In this appeal defendant attacks his Superior Court jury convictions of robbery in the first degree and possession of a deadly weapon during the commission of a felony. The threshold issue is the jurisdiction of this Court since the defendant failed to perfect his appeal within 30 days as required by Supr.Ct. Rule 6 and 10 *Del.C.* § 147.[1] Upon resolution of that issue in defendant's favor, we consider defendant's contentions that the Trial Judge erred by admitting into evidence a pistol alleged to be the crime weapon and that his convictions should be reversed because he was denied constitutionally mandated assistance of counsel.

I

The State initially attacked this *pro se* appeal by motion to dismiss on the ground of lack of jurisdiction based upon untimeliness in filing. Counsel was appointed by this Court to document defendant's asserted unsuccessful efforts to perfect an appeal. An answer to the State's motion was filed by appointed counsel for defendant. The documentary evidence attached to the answer supports defendant's position that he was prevented from properly perfecting his appeal by both the action and inaction of State agencies. The State withdrew its motion to dismiss, and joins in the defendant's argument that the appeal be heard on its merits. Because defendant did all that was required of him in seeking review; and because his default has been occasioned by court related personnel; his petition for review will not be denied. *Casey v. Southern Corporation,* Del.Sup., 29 A.2d 174 (1942); *Hardy v. Warden,* Md. App., 146 A.2d 42 (1958); *State v. Mason,*

---

1. Supr.Ct. Rule 6 provides in its pertinent part:
   "A notice of appeal shall be filed in the office of the Clerk of this Court within 30 days after entry of the judgment or order from which the appeal is taken."
   10 *Del.C.* § 147 provides:

   "No appeal from the Superior Court in a criminal action shall be received or entertained in the Supreme Court unless the praecipe or notice of appeal is duly filed in the office of the Clerk thereof within 30 days after the date of the judgment or decree."

N.J.Super., App.Div., 90 N.J.Super. 464, 218 A.2d 158 (1958); and *Commonwealth ex rel. Scoleri v. Myers*, Pa.Sup., 423 Pa. 558, 225 A.2d 540 (1967).

## II

This gun-point robbery occurred at Simmons Food Market in Wilmington. The victim was a customer. Also present was the proprietor and at least one female witness. All three of these eyewitnesses identified defendant as the robber. The female witness further identified the gun as a .22 caliber handgun.

The proprietor of the store and others chased the robber until the police took up the chase and apprehended the defendant with a .22 caliber pistol in his hand.

The pistol was marked by Officer Curran, the arresting officer, with his initials and badge number and then turned over to the Records Division of the Wilmington Bureau of Police where it remained except for a period of approximately one month while it was in the custody of the F.B.I.

The defendant asserts a two pronged attack upon the admissibility at trial of the alleged crime weapon. First, he claims that the State did not satisfactorily establish the chain of custody. Second, he claims there is no evidence in the record that the pistol was a deadly weapon prior to the time it was taken to the F.B.I.

The thrust of defendant's argument is based upon the absence of evidence to support the State's burden of showing that the weapon had not been tampered with during the time it was out of the custody of the Wilmington Bureau of Police. The weapon had been sent to the F.B.I. for test firing but, in fact, was not test fired until the eve of trial when it was done by a member of the Wilmington Bureau of Police at the request of the prosecutor.

On the other hand, Officer Curran testified at trial after examining the weapon that there appeared no alterations or evidence of tampering since he took the pistol from the defendant.

As stated by Chief Justice Herrmann in *Tatman v. State*, Del.Sup., 314 A.2d 417 (1973):

> "To be sure, the State is obliged to account for its careful custody of evidence from the moment the State is in receipt of the evidence until trial. The State need not, however, prove beyond all possibility of doubt the identity of the evidence or the improbability of tampering; it need only prove that there is a reasonable probability that no tampering has occurred."

We find that the undisputed testimony of Office Curran and of Officer Osowski, who test fired the pistol, meets the test that there is a reasonable probability no tampering had occurred and that the pistol was a deadly weapon at the time it was taken into police custody. The weight to be given that testimony, and the testimony of the eye witnesses, was properly a matter for the jury.

## III

Defendant also contends the Trial Court denied him his constitutional right to assistance of counsel at trial.[2] Following his indictment, defendant was represented by the Public Defender's Office. The case was set for trial, witnesses were subpoenaed, and, at the call of the trial calendar on the morning set, counsel notified the Court that the case was ready for trial. Before calling the case for trial, however, the defendant expressed dissatisfaction with counsel and requested that another attorney be appointed. Defendant's re-

---

2. The Sixth and Fourteenth Amendments to the Federal Constitution "guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

Art. 1 § 7 of the Delaware Constitution provides: "In all criminal prosecutions, the accused hath a right to be heard by himself and his counsel, . . . ."

An attack on the *effective* assistance of counsel is not before the Court, there having been no prior litigation of such a claim in the Superior Court under Super.Ct.Crim.R. 35.

quest was granted, another attorney on the staff of the Public Defender took over the case and was given a six weeks continuance. On the next date set for trial defendant's second attorney succeeded in getting a severance of the two pending robbery charges. Following jury selection in one of the severed charges, the Trial Judge was advised by counsel for defendant that the defendant wished to represent himself during trial, with counsel standing by to assist him. After rather extensive questioning of defendant by the Trial Judge to explain the dangers and disadvantages of self representation for the purpose of determining that the application for self representation was intelligently and voluntarily made, defendant was permitted to proceed on his own behalf with standby counsel to assist him.[3] Defendant now claims that his request was not a voluntary waiver, and that he was forced to make the request because he was dissatisfied with his attorney's assistance and had concluded he could do a better job representing himself than could his attorney.

Relying on *Faretta v. California, supra,* the State contends that because defendant made a voluntary and intelligent election to personally manage and conduct his own case after being made aware of the dangers and disadvantages of self representation, he should not now be permitted to complain.

In *Faretta* the defendant made his election well before the date of trial. The defendant, Faretta, requested that he be permitted to represent himself; that he had defended himself in a criminal case before; that he had a high school education; and that he did not want a public defender because of that office's heavy case load. The judge preliminarily accepted Faretta's waiver of the assistance, but it was not until two weeks later, after a full hearing,

that the acceptance was finalized and Faretta was permitted to proceed on his own behalf. The circumstances of this case are not those of *Faretta*, and, in our view, the rule of that case does not apply. *See Gibbs v. State*, Del.Sup., 359 A.2d 164 (1976).

In this case defendant had the assistance of counsel. On the day first set for trial he was permitted to discharge that attorney and another member of the Public Defender's office was appointed to represent him. On the day next set for trial defendant expressed dissatisfaction with his second appointed counsel, and refused to assist in the jury selection. It was after the jury was sworn that defendant informed the Trial Judge that he wished to make the opening statement and conduct the examination of witnesses.

At that stage of the proceedings the jury had been empaneled and sworn, and jeopardy had attached. *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24, 23 Cr.L. 3105 (1978). It was not then incumbent upon the Court to delay trial or to appoint new counsel. In *United States ex rel. Carey v. Rundle*, 3rd Cir., 409 F.2d 1210 (1969), *cert. denied*, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970) the Court stated:

"Desirable as it is that a defendant obtain private counsel of his own choice, that goal must be weighed and balanced against an equally desirable public need for the efficient and effective administration of criminal justice. The calendar control of modern criminal court dockets, especially in metropolitan communities, is a sophisticated operation constantly buffeted by conflicting forces. The accused's rights—such as those relating to a speedy trial, to an adequate opportunity to prepare the defense, and to confront witnesses—are constantly in potential or

---

**3.** The Trial Judge addressed defendant:

"I can say right now that at the very least we would want to have you assisted by counsel because these charges are serious charges and they carry a potential sentence of imprisonment. Now what is your desire; is it your desire to represent yourself and to have Mr. Lukoff there to assist you, or is your desire to have Mr. Lukoff represent you? And of

course if he represents you, he is in consultation with you and listens to your points and wishes and asserts them so far as he thinks it is going to help you and it is proper and legal. What is your desire; what do you want to do?"

And the defendant responded:

"Well, I can represent myself but I would like to have his assistance, you know."

real conflict with the prosecution's legitimate demands for some stability in the scheduling of cases. The availability of prosecution witnesses is often critically dependent on the predictability of the trial list. That delays and postponements only increase the reluctance of witnesses to appear in court, especially in criminal matters, is a phenomenon which scarcely needs elucidation.

Moreover, it is not only the prosecution which may suffer from unscheduled changes in the calendar. To permit a continuance to accommodate one defendant may in itself prejudice the rights of another defendant whose trial is delayed because of the continuance. Played to an extreme conclusion, this indiscriminate game of judicial musical chairs could collapse any semblance of sound administration, and work to the ultimate prejudice of many defendants awaiting trial in criminal courts.

This is not to say that there should be an arbitrary and inelastic calendaring of cases without due regard, for example, to the existence of conflicting demands for the service of a particular counsel by different courts or by the schedules within a multi-judge court. In judicial administration, too, there should be no absolutes. It is the trial judge who must balance the conflicting demands of court administration with the rights of the accused, conscious, however, that when he considers the rights of those accused of crime, he must consider not only those involved in the case immediately before him but also those of other defendants awaiting trial whose rights may be affected by the consequences of trial delay."

4. See A Comparative Study of the American Bar Associations Standards For Criminal Justice with Present Delaware Law, Part V, Chapter 18, § 6.7.

5. The indictments under which defendant was prosecuted read in their pertinent part as follows:

In *United States v. Dougherty*, D.C.Cir., 154 U.S.App.D.C. 76, 473 F.2d 1113 (1972) the Court stated: [4]

"When the *pro se* right is claimed after the trial has begun, the court exercises its discretion. It may weigh the inconvenience threatened by defendant's belated request against the possible prejudice from denial of defendant's request."

\* \* \* \* \* \*

"Given the general likelihood that *pro se* defendants have only a rudimentary acquaintanceship with the rules of evidence and courtroom protocol, a measure of unorthodoxy, confusion and delay is likely, perhaps inevitable, in *pro se* cases. The energy and time toll on the trial judge, as fairness calls him to articulate ground rules and reasons that need not be explained to an experienced trial counsel, can be relieved, at least in part, by an amicus curiae to assist the defendant."

We find no merit in defendant's contention that he was denied his constitutional right to assistance of counsel.

## IV

█ Finding no merit in defendant's substantive grounds for reversal we affirm the conviction on the charge of robbery in the first degree. But as to the charge of possession of a deadly weapon during the commission of a felony we reach a different result by reason of this Court's opinion in *Davis v. State*, Del.Sup., 400 A.2d 292 (1979). In that case we held that charges of robbery in the first degree brought under 11 *Del.C.* § 832(a)(2) and companion charges of possession of a deadly weapon under 11 *Del.C.* § 1447(a) merge into § 832(a)(2) proscribing conviction and sentence under both.[5] Defendant's conviction and sentence

"The Grand Jury charges HERBERT D. LINDSEY, JR. with the following offenses, felonies:

*COUNT II*

ROBBERY FIRST DEGREE in violation of Title 11, Section 832(a)(2) of the Delaware Code of 1974, as amended.

on the charge of possession of a deadly weapon during the commission of a felony is reversed, and the case will be remanded to the Superior Court for resentencing on the charge of robbery in the first degree. At resentencing, the Trial Judge will not be limited to the sentence imposed initially for the robbery conviction, but the sentence may not exceed the combined duration of the two terms imposed before this appeal.

\* \* \* \* \* \*

AFFIRMED as to defendant's conviction of robbery, but REVERSED and REMANDED for proceedings consistent with this opinion as to the possession of a deadly weapon during the course of a felony conviction.

HERBERT D. LINDSEY, JR. on or about the 24th day of December, 1975, in the County of New Castle, State of Delaware, did then and there feloniously in the course of committing theft, threaten the immediate use of force upon William Herscher at Simmons Food Market, located at 700 Washington Street, Wilmington, Delaware, with intent to compel the said William Herscher to deliver up approximately $76.03 in United States Currency, and when in the course of the commission of the crime, displayed what appeared to be a deadly weapon, to wit: a handgun.

*COUNT III*
POSSESSION OF A DEADLY WEAPON DURING THE COMMISSION OF A FELONY in violation of Title 11, Section 1447 of the Delaware Code of 1974, as amended.

HERBERT D. LINDSEY, JR. on or about the 24th day of December, 1975, in the County of New Castle, State of Delaware, did then and there feloniously have in his possession a deadly weapon, to wit: a .22 caliber pistol, during the commission of a felony, to wit: Robbery First Degree in violation of 11 *Del.C.* Section 832(2)(2)[(a)(2)], as set forth in Count II of this Indictment."