Sara C. HUNTER, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted Oct. 16, 1979.

Decided March 14, 1980.

Submitted on Motion for Reargument
May 27, 1980.

Decided on Motion for Reargument
June 24, 1980.

Richard E. Fairbanks, Jr. and Edward C. Pankowski, Jr., Asst. Public Defenders, Wilmington, for defendant below, appellant.

Bartholomew J. Dalton and Charles M. Oberly, III, Deputy Attys. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., DUFFY, McNEILLY, QUILLEN, and HORSEY, JJ., constituting the Court En Banc.

HERRMANN, Chief Justice:

On this appeal, we are required to decide, *inter alia*, whether the defendant Sara C. Hunter may be sentenced cumulatively upon convictions in one trial of: (1) Assault in the First Degree, in violation of 11 *Del.C.* § 613(1); [1] and (2) Possession of a Deadly Weapon During the Commission of a Felony, in violation of 11 *Del.C.* § 1447. [2]

## I.

The defendant was indicted upon two counts: Count I charged violation of § 613 [3] and Count II charged violation of 1447. [4] Upon her conviction in a single trial on both Counts, the defendant was sentenced to incarceration for a period of 10 years–5 years on the § 613(1) conviction and 5 years on the § 1447 conviction, to run consecutively. Later, pursuant to a motion for reduction of sentence, the sentence on the § 613(1) conviction was changed to probation for 5 years commencing upon the termination of the minimum 5 year term of incarceration mandated by the Statute for the § 1447 conviction. The defendant attacks the con-

1. 11 *Del.C.* § 613 provides:

"§ 613. Assault in the first degree; class B felony.

"A person is guilty of assault in the first degree when:

"(1) He intentionally causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument; or

"(2) He intentionally disfigures another person seriously and permanently, or intentionally destroys, amputates or disables permanently a member or organ of another person's body; or

"(3) He recklessly engages in conduct which creates a substantial risk of death to another person, and thereby causes serious physical injury to another person; or

"(4) In the course of or in furtherance of the commission or attempted commission of a felony or immediate flight therefrom, he intentionally or recklessly causes serious physical injury to another person; or

"(5) He intentionally causes serious physical injury to a law enforcement officer who is acting in the lawful performance of his duty.

"Assault in the first degree is a class B felony. (11 Del.C. 1953, § 613; 58 Del.Laws, c. 497, § 1.)"

The term "serious physical injury" is defined as including injury "which creates a substantial risk of death or which creates serious and prolonged disfigurement." 11 *Del.C.* § 222(20).

For a Class B felony, the term of imprisonment which the Court may impose is set by Statute "from 3 to 30 years and such fine or other conditions as the Court may order." 11 *Del.C.* § 4205(b)(2).

2. 11 *Del.C.* § 1447 provides:

"§ 1447. Possession of a deadly weapon during commission of a felony; class B felony.

"(a) A person who is in possession of a deadly weapon during the commission of a felony is guilty of possession of a deadly weapon during commission of a felony.

"Possession of a deadly weapon during commission of a felony is a class B felony.

"(b) Notwithstanding § 4205 of this title, the minimum sentence for a violation of this section shall be not less than 5 years which minimum sentence shall not be subject to suspension and no person convicted for a violation of this section shall be eligible for parole or probation during such 5 years.

"(c) Any sentence imposed upon conviction for possession of a deadly weapon during the commission of a felony shall not run concurrently with any other sentence. In any instance where a person is convicted of a felony, together with a conviction for the possession of a deadly weapon during the commission of such felony, such person shall serve the sentence for the felony itself before beginning the sentence imposed for possession of deadly weapon during such felony.

"(d) Every person charged under this section over the age of 16 years shall be tried as an adult, notwithstanding any contrary provision of statutes governing the Family Court or any other state law.

"(e) A person may be found guilty of violating this section notwithstanding that the felony for which he is convicted and during which he possessed the deadly weapon is a lesser included felony of the one originally charged. (11 Del.C. 1953, § 1447; 58 Del.Laws, c. 497, § 1; 59 Del.Laws, c. 203, § 34; 59 Del.Laws, c. 547, § 15; 60 Del. Laws, c. 306, §§ 1, 2.)"

3. Count I charged Assault First Degree in violation of 11 *Del.C.* § 613, in that the defendant "did intentionally cause serious physical injury to Terry Mutler by means of a deadly weapon, to wit: did slash Terry Mutler with a kitchen carving knife, thereby causing serious physical injury." [Specifically, this was a prosecution under § 613(1)].

4. Count II charged Possession of a Deadly Weapon during the Commission of a Felony in violation of 11 *Del.C.* § 1447, in that the defendant "did knowingly possess a deadly weapon, to wit: a kitchen carving knife, during the commission of Assault First Degree as set forth in Count I of this Indictment which is incorporated herein by reference."

victions on various grounds, and the § 1447 conviction and sentence especially upon the basis of *Davis v. State*, Del.Supr., 400 A.2d 292 (1979).

## II.

The basic facts will be stated as generally and briefly as possible; other facts, relevant to specific grounds of the appeal, will be detailed in the discussion of the specific contentions.

The charges against the defendant arose out of an altercation that occurred at the defendant's apartment. The victim testified that she had been requested by her cousin to go to the defendant's house to settle a difference between the cousin and the defendant. After an argument at the doorway to the defendant's apartment, according to the victim's testimony, the defendant jumped out of the doorway, threatened to kill her, and stabbed her with a knife causing cuts requiring over 150 stitches, including lacerations of the face, breast, arms and back, and a 4 inch stab under shoulder blade. On the other hand, the defendant testified that, while still inside her doorway, she was cut by the victim with a knife before she stabbed the victim in self–defense. There was evidence that the victim had been drinking during the day in question which, according to the self–defense position of the defendant, resulted in the victim's being intoxicated at the time of the altercation.

## III.

Disposing first of the defendant's assertions of reversible errors in the trial as follows:

■ First, the defendant contends that the Trial Court committed error in admitting into evidence a photograph showing the victim a short time after the stabbing, bandaged after emergency treatment, sitting in a wheel chair. The evidence was objected to as irrelevant, unduly prejudicial, and inflammatory. We find no abuse of discretion by the Trial Court in the admission of the photograph. *Shantz v. State*, Del.Supr., 344 A.2d 245 (1975).

■ Secondly, the defendant contends that the Trial Court committed reversible error in refusing to allow either testimony by an expert witness as to the blood alcohol content of the victim or by failing to instruct the jury under 21 *Del.C.* § 4177(a).[5] We find no error in this connection in view of the facts that the jury heard testimony that the victim's blood alcohol count was .10% and perhaps higher, and that there was no request for an instruction under § 4177(a).

■ Finally, in her general attacks upon the convictions, the defendant argues that the prosecutor's remark in his rebuttal summation regarding "prior conviction" falsely implied that the defendant had a previous conviction and was so prejudicial as to require reversal. We find no merit in this contention.

In its closing argument the defense stated:

"The only two episodes of violence that you have heard about Sara Hunter, who has never been convicted of a felony, a mother of five was the episode four to six weeks before this one."

In his rebuttal summation, the prosecutor stated:

"Don't let someone who may have a prior conviction be convicted on less evidence than someone who doesn't have a prior conviction. The evidence required for each person is the same. They stand new in front of the law every time they stand up here."

There has been no showing of error in the trial to justify a new trial.

---

5. 21 *Del.C.* § 4177(a) pertains to the offense of operating a vehicle while under the influence of *intoxicating liquor and* contains the following provision:

"Any person who drives, operates or has in actual physical control a vehicle while such person's blood has reached a blood alcohol concentration of one tenth of 1% or more by weight as shown by a chemical analysis of a blood, breath or urine sample taken within 4 hours of the alleged offense shall be guilty under this section."

## IV.

Turning now to the more difficult question of whether the conviction and sentence on the felony–weapon possession charge under § 1447 may stand in the light of *Davis*, our conclusion is that *Davis* does not apply in this case.

The *Davis* case involved convictions for Attempted Robbery in the First Degree under 11 *Del.C.* § 832[6] and Possession of a Deadly Weapon During the Commission of a Felony under § 1447; a separate sentence was imposed on each charge. In *Davis*, this Court followed the example of *Simpson v. United States*, 435 U.S. 6, 11–12, 98 S.Ct. 909, 913, 55 L.Ed.2d 70, 76 (1978): before examination to determine whether cumulative punishments for two statutory offenses are constitutionally permissible, it is necessary, following the policy of avoiding constitutional decisions when possible, to determine whether the Legislature intended to subject the defendant to multiple penalties for the single criminal transaction in which she engaged. After analyzing and comparing the elements of § 832(a)(2) and § 1447, this Court concluded in *Davis* that "as to armed robbery, the General Assembly has defined two indistinguishable crimes and that it intended to replace the weapons statute, § 1447, with the special aggravated crime of first–degree robbery, § 832".

The *Davis* approach does not govern the instant case because the Assault First Degree Statute, § 613, lacks the statutory history of the Robbery Statute, § 832, as outlined in *Davis*, and because § 613 lacks any "built–in" enhancement–of–punishment provision comparable to § 832(c). Moreover, unlike the Robbery Statute § 832(a)(2) in its relationship to § 1447 which arises out of the mere "display" of a deadly weapon, by the three Assault Statutes the General Assembly seeks to enhance punishment more for the perpetrator's state of mind and the seriousness of the injury than for the possession of the deadly weapon used. The Assault in the Third Degree Statute [11 *Del.C.* § 611(2)] proscribes the infliction by means of a deadly weapon of physical injury *with criminal negligence*; violation of § 611(2) is a misdemeanor. The Assault in the Second Degree Statute [11 *Del.C.* §§ 612(2) and (3)] proscribes the infliction by means of a deadly weapon of physical injury *intentionally*, or of serious physical injury *recklessly*; violation of either of these sections is a class C felony. Finally, the Assault in the First Degree Statute [11 *Del.C.* § 613(1)] proscribes the infliction by means of a deadly weapon of serious physical injury *intentionally*; violation of § 613(1) is a class B felony. There is no enhanced punishment by reason of the possession of a deadly weapon built into the Assault Statutes. Clearly, therefore, it cannot be said, as in *Davis* regarding § 832(a)(2), that the purpose and effect of § 613(1) is the same as § 1447.

Accordingly, we hold that the *Davis* case is inapposite and that, therefore, the § 1447 conviction and sentence in the instant case do not fall by *reason thereof.*

---

**6.** "§ 832. Robbery in the first degree.

"(a) A person is guilty of robbery in the first degree when he commits the crime of robbery in the second degree and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:

"(1) Causes physical injury to any person who is not a participant in the crime; or

"(2) Displays what appears to be a deadly weapon; or

"(3) Is armed with and uses or threatens the use of a dangerous instrument.

"Robbery in the first degree is a class B felony.

"(b) Notwithstanding §§ 4205(b)(2) and 4215 of this title, a person convicted a second or subsequent time for robbery in the first degree shall be sentenced to a term of imprisonment for not less than 10 nor more than 30 years and the court shall not suspend the sentence of such person, nor give such person a probationary sentence, nor shall the term of imprisonment imposed under this section run concurrently with any other term of imprisonment imposed for the commission of such offense.

"(c) The minimum sentence of imprisonment required by this section and § 4205 of this title for a first offense shall not be subject to suspension, and no person convicted under this section shall be eligible for probation or parole during the first 3 years of such sentence. (11 Del.C. 1953, § 832; 58 Del.Laws, c. 497, § 1; 59 Del.Laws, c. 547, § 6; 60 Del.Laws, c. 240, §§ 1, 2.)"

## V.

### A.

█ But that conclusion may not be permitted to end the matter. Cases in which the State "is able to prove violations of two separate criminal statutes with the same factual showing, as here, raise the prospect of double jeopardy and the possible need to evaluate the statutes in light of the *Blockburger*[7] test." *Simpson v. United States,* supra, 435 U.S. at 11, 98 S.Ct. at 912, 55 L.Ed.2d at 76.

Before entering into an examination of whether cumulative punishments for the two offenses under § 613(1) and § 1447 are constitutionally permissible, just as in *Davis* we considered preliminarily the question of whether the General Assembly intended to subject the defendant to multiple penalties for the single criminal act in which she engaged. It is our conclusion that such was the legislative intent. There is no statutory history to the contrary; and the two Statutes are clear and unambiguous, leaving no room for the application of rules of statutory construction. Compare *Simpson v. United States,* supra. "There is nothing anywhere in the pertinent Statutes to suggest that one statutory offense was intended to be deprived of its status as the basis for prosecution by reason of its relationship to another offense. Indeed, the clear purpose and intent of the Felon's Firearm Possession Act [§ 1447] is to contrary." *State v. Honie,* Del.Supr., 310 A.2d 872, 874 (1973).[8]

For these reasons and the reasons stated in Part IV hereof, we conclude that § 1447 creates an offense distinct from the underlying § 613(1) felony of Assault First Degree, and that it was the legislative intent to subject this defendant to multiple penalties for the single criminal act in which she engaged. Accordingly, in this case we reach the constitutional double jeopardy issue and the need to evaluate § 613(1) and § 1447 in the light of the *Blockburger* test.

The Double Jeopardy Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The Delaware Constitution, Art. I, § 8, similarly provides that no person shall be twice put in jeopardy "for the same offense". We have little helpful case law under the State Constitutional provision, see e. g., *State v. Turner,* Del.Supr., 3 Storey 305, 168 A.2d 539 (1961); *State v. Hamilton,* Del.Super., 318 A.2d 624 (1974); but there are several recent helpful pronouncements on the subject by the United States Supreme Court.

The double jeopardy guarantee "serves principally as a restraint on courts and prosecutors. The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial." *Brown v. Ohio,* 431 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 193 (1977). "What lies at the heart of the Double Jeopardy Clause is the prohibition against multiple prosecutions for 'the same offense' ", *Jeffers v. United States,* 432 U.S. 137, 150, 97 S.Ct. 2207, 2216, 53 L.Ed.2d 168, 180 (1977), and protection "against multiple punishment for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 665 (1969).

In *Blockburger,* the Supreme Court set out the test for determining "whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment." *Brown v. Ohio,* supra, 431 U.S. at 166, 97 S.Ct. at 2225, 53 L.Ed.2d at 194. It

---

7. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

8. The portions of *Honie* (310 A.2d at 874) dealing with discretionary sentencing—within the limits of the proscription that "double punishment for substantially the same offense is impermissible in the eyes of the law"—have become outmoded and superseded by the subsequent amendments of § 1447, explicitly prohibiting concurrent sentencing and requiring that any sentence for the underlying felony be served prior to the mandatory term for possession of a deadly weapon. See 60 *Del.L.* ch. 306, 308.

there held that "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States,* supra, 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed.2d at 309. "The *Blockburger* test has its primary relevance in the double jeopardy context, where it is a guide for determining when two separately defined crimes constitute the 'same offense' for double jeopardy purposes." *Simpson v. United States,* supra, 435 U.S. at 11, 98 S.Ct. at 912, 55 L.Ed.2d at 76. The test emphasizes the elements of the two offenses. "If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the offenses." *Iannelli v. United States,* 420 U.S. 770, 785, 95 S.Ct. 1284, 1294, 43 L.Ed.2d 616, 627, n.17 (1975).

\* \* \*

■ In the instant case, it is clear that the *Blockburger* test has not been satisfied and that multiple punishments for the "same offense" have been imposed. Section 1447 required proof of no fact not required by § 613(1). The elements required to be proved under Count I and Count II of the Indictment were identical: Under Count I, the State, to obtain a conviction for Assault in the First Degree, was required to prove that defendant intentionally caused serious physical injury to another person by means of a deadly weapon. Under Count II, the State was compelled to prove the possession of the deadly weapon as well as all the elements of the underlying felony, Assault in the First Degree, as alleged in Count I. Compare *United States v. Busic,* (3 Cir.), 587 F.2d 577 (1978). For double jeopardy purposes, the two offenses are undoubtedly "the same".

**B.**

■ But that does not mean that the two convictions under the two Counts of the Indictment may not stand. The Double Jeopardy Clause prohibits "multiple prosecutions" for the same offense, *Jeffers v. United States,* 432 U.S. 137, 150–151, 97 S.Ct. 2207, 2216, 53 L.Ed.2d 168 (1977). Since the crux of this constitutional proscription lies in the ordeal of multiple trials and multiple punishment for the same offense, *North Carolina v. Pearce,* supra, 89 S.Ct. at 2089, dual indictments and dual convictions in a single, simultaneous prosecution for an act which amounts to the same offense under separate statutes do not violate the Double Jeopardy Clause. See *United States v. McDaniel,* 176 U.S.App. D.C. 60, 538 F.2d 408 (1976); *United States v. Redman,* (D.Del.), 470 F.Supp. 50 (1979); *United States v. Hearst,* (N.D.Cal.), 412 F.Supp. 877 (1976). See also *Simpson v. United States,* supra; *United States v. Busic,* (3 Cir.), 587 F.2d 577 (1978); but cf. *United States v. Eagle,* (8 Cir.), 539 F.2d 1166 (1976). It is only when, as here, multiple punishments are imposed upon such dual convictions under statutes that proscribe the same offense that the spectre of constitutional violations arise.

In addition to the federal double jeopardy authorities, it is settled in this jurisdiction that a weapon–possession charge under § 1447, set out in the indictment separately from the underlying offense, as here will support a separate conviction under § 1447. *Mackie v State,* Del.Supr., 384 A.2d 625 (1978).[9]

\* \* \*

Accordingly, both convictions are affirmed.

**C.**

■ Since the cumulative sentences imposed by the Trial Court in the instant case may not stand, there must be a remand for resentencing. Under the conclusions reached herein, the case returns under the

---

**9.** In *Mackie,* this Court construed 11 *Del.C.* § 206 and held that a conviction upon a separate charge under § 1447 does not constitute a

prohibited dual conviction of a lesser included offense under § 206(b).

remand with both convictions intact. Adopting the practice of the Third Circuit Court of Appeals on the remand of this case for resentencing, we direct that the State shall have the election to proceed under either § 613 or § 1447, but not both. See *United States v. Busic*, supra, 587 F.2d at 589.

The practice of allowing such prosecutorial choice, without regard for the "rule of lenity", is in accord with recent pronouncements of the United States Supreme Court, *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979), involving two statutes that contained overlapping provisions prohibiting convicted felons from receiving firearms, but each authorizing different maximum penalties. The Court there stated:

"This Court has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants. \* \* \*. Whether to prosecute and what charge to file or bring \* \* \* are decisions that generally rest in the prosecutor's discretion. \* \* \*. [T]here is no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements. \* \* \* The prosecutor may be influenced by the penalties available upon conviction, but this fact standing alone does not give rise to a violation of the Equal Protection or Due Process Clauses. \* \* \* Just as a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution, neither is he entitled to choose the penalty scheme under which he will be sentenced. \* \* \*." 99 S.Ct. at 2204–5.

\*   \*   \*

Affirmed as to the convictions. The sentences are set aside and the cause remanded for further proceedings consistent with this opinion.

QUILLEN, Justice, concurring:

There is no more confusing area of criminal and constitutional law than the issue of double jeopardy and the related problems of statutory interpretation. The majority opinion tackles the thicket directly and clearly. I think the result is constitutionally mandated under current standards. But the opinion also is limited in the customary sound tradition of judicial restraint in that it considers only the instant appeal. My fear is that the limited, and isolated, case by case, subsection by subsection, approach may, in this area, be counterproductive in light of a general purpose of the Code "[t]o differentiate upon reasonable grounds between serious and minor offenses and to prescribe proportionate penalties therefor". 11 *Del.C.* § 201(4). I therefore express my concern briefly and suggest uncharacteristically that we should at least attempt to take a broader sweep in an effort to assure a more orderly and more rational administration of the penal provisions as a whole.

The appeal in this case raises a question factually akin to that faced by this Court in *Davis v. State*, Del.Supr., 400 A.2d 292 (1979) and *Bey v. State*, Del.Supr., 402 A.2d 362 (1979). In those cases, as a matter of statutory construction, this Court determined that, "[w]hen it is· alleged that a robber displayed a deadly weapon", the General Assembly "intended to replace the weapons statute, § 1447, with the special aggravated crime of first–degree robbery, § 832". *Davis v. State, supra,* 400 A.2d 296, 297; 11 *Del.C.* § 832(a)(2), § 1447.[1] Thus, the *convictions under § 1447 were reversed.*

In the present case, the Court determines that convictions for assault in the first degree under 11 *Del.C.* § 613(1) and for possession of a deadly weapon during the commission of a felony under 11 *Del.C.* § 1447 can stand. But the Court also holds that the defendant cannot be subjected to two sentences on the dual convictions due to the

---

1. For purposes of the point of this separate opinion, it is not necessary to further complicate the issues by considering that *Davis* involved attempted robbery. But see *Smith v. State*, Del.Supr., 412 A.2d 331 (1980).

constitutional limitation of double jeopardy which proscribes multiple punishments for the same offense. Thus, the case is *remanded for resentence on one* of the convictions with the selection *at the State's option.*

The opinion in the instant case decides the following points with which I am in agreement: there is nothing to suggest that the General Assembly intended that either statute was to be deprived of its status as a basis of prosecution due to its relation to the other; both convictions can withstand constitutional attack; there can be but one sentence due to constitutional limitations of double jeopardy (a point conceded by the State at oral argument); and resentencing should be on the conviction the State elects.

But, because the *Davis* case has been urged by the defense as a ground for reversal and because it is frequently difficult in an isolated case to appreciate the impact of a decision on the general administration of the codified law and because the disposition here leaves two viable approaches in similar situations with serious anomalous results, I think the State court of last resort, sitting en banc, with judicial responsibility for uniformity in criminal law interpretation, should, as urged by the State, reconsider *Davis* on its merits in this appeal.[2] For this reason, I merely concur in the decision of the Court by this separate opinion.

\* \* \*

## UPON MOTION FOR REARGUMENT AND CLARIFICATION

HERRMANN, Chief Justice (for the majority):

Subsequent to the publication of the foregoing opinions on March 14, 1980, this Court received a motion by the defendant for reargument and clarification of the opinion on the issue of resentencing in the light of *Davis.*[3] On April 16, 1980, and before this Court acted upon the defendant's motion, the United States Supreme Court decided the case of *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). In view of the apparent conflict between the foregoing opinion and *Whalen,* this Court, *sua sponte,* requested additional memoranda from the parties concerning the effect of *Whalen* on the conclusions reached in the foregoing opinion.

### I.

We take up first the effect of *Whalen.* That case involved an appeal from convictions in the District of Columbia for the crimes of rape and felony murder based on the rape. The defendant in that case contended that the two felonies merged for the purposes of punishment and that cumulative punishment for these crimes violated the Double Jeopardy Clause of the Fifth Amendment. Finding that the Double Jeopardy Clause in cumulative punishment cases involves at a minimum a determination of legislative intent, the Court stated:

"The Double Jeopardy Clause at the very least precludes federal courts from imposing consecutive sentences unless authorized to do so. The Fifth Amendment guarantee against double jeopardy embodies in this respect simply one aspect of the basic principle that within our federal constitutional framework the legislative power, including the power to define

---

2. In this area of the law, it is doubtful that all anomaly can be eliminated. But anomalous results created by statutory interpretation, as in *Davis*, should give one pause and cause one to question whether the results were truly legislatively intended.

3. In *Davis* this Court stated:

"Because we have determined that § 832 is indistinguishable from and has replaced § 1447 in cases of armed robbery, defendant's conviction under the weapons statute cannot stand. His conviction for attempted first–degree robbery remains, however, and the case will be remanded to Superior Court for resentencing on that charge. At resentencing, the Trial Judge will not be limited to the mandatory minimum sentence imposed initially for the attempted robbery conviction, but the sentence may not exceed the combined duration of the two terms imposed before this appeal. This limitation appears to comply with the requirements imposed by *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)." 400 A.2d at 297.

criminal offenses and to prescribe punishments to be imposed upon those found guilty of them, resides wholly with the Congress. . . . If a federal court exceeds its own authority by imposing multiple punishments not authorized by Congress, it violates not only the specific guarantee against double jeopardy, but also the constitutional principle of separation of powers in a manner that trenches particularly harshly on individual liberty."

100 S.Ct. at 1436–1437, 63 L.Ed.2d at 722 (citations omitted). It then concluded, on the basis of legislative history and the policy of lenity, that Congress did not intend to punish doubly and, therefore, reversed the Court of Appeals decision affirming the consecutive sentences.

The State contends that *Whalen* mandates that our foregoing opinion in this case be withdrawn. The State argues that in cumulative punishment cases the bounds of the Double Jeopardy Clause are defined and controlled by the will of the legislature.[4] The defendant, on the other hand, contends that *Whalen* is distinguishable from this case and that the foregoing opinion should stand. We agree.

Before reaching the substance of the matter, we are compelled to note that increasing uncertainty exists in this area of the law, resulting from the somewhat ambiguous and to us, at least, puzzling pronouncements in recent United States Supreme Court cases. Compare *Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55

L.Ed.2d 70 (1978); *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *Busic v. United States*, —— U.S. ——, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980). We are not alone in this posture. See e. g., *People v. Hughes*, 85 Mich.Ct.App. 674, 272 N.W.2d 567 (1978); Western & Drubel, *Toward a General Theory of Double Jeopardy*, 1978 SUPREME COURT REV. 81, 113. We thought the Supreme Court cases, and quotations therefrom, cited in the foregoing opinion in this case, constituted settled law on the subject of double jeopardy. But the Court's recent majority decision in *Whalen* seems to have added a new and, perhaps, contrary analysis structure to cumulative punishment cases without any attempt to clarify, distinguish, or overrule its prior decisions upon the basis of which the foregoing opinion was formulated.[5] It is within this vacuum that we are asked to decide the effect of *Whalen* on the instant case.

We distinguish *Whalen*. That case concluded that Congress had not intended to punish doubly for the crimes of rape and felony murder. Thus, the analysis stopped with the determination that the District of Columbia Court of Appeals had exceeded its legislative authorization in affirming consecutive sentences. On the other hand, our analysis here does not terminate but, in fact, only begins with a determination of the legislative intent behind § 613 and § 1447. We are presented with a question wholly different than that posed in *Whalen*. There, the concern was the scope of the

**4.** This is a view apparently shared by Justices Blackmun and Rehnquist. See 100 S.Ct. at 1441, 1443, 63 L.Ed.2d at 726, 728. See also *Busic v. United States*, —— U.S. ——, ——, – ---, 100 S.Ct. 1747, 1756–1758, 1758–1759, 64 L.Ed.2d 381 (1980).

**5.** For example, *Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978) declared that "[b]efore an examination is made to determine whether cumulative punishments are constitutionally permissible, it is necessary, following our practice of avoiding constitutional decisions where possible, to determine whether Congress intended to subject the defendant to multiple penalties for the single transaction in which he engaged." 98 S.Ct. at 913. *Whalen* concluded, however, that "the question wheth-

er punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized." 100 S.Ct. at 1436, 63 L.Ed.2d at 721. On the basis of the later holding in *Whalen* it might be argued that the procedural analysis in *Simpson* has been impliedly overruled, c. f. *Busic v. United States*, —— U.S. ——, ——, 100 S.Ct. 1758–1759, 64 L.Ed.2d 381 (1980) (Rehnquist, J., dissenting), *Simpson* however has recently been reaffirmed. *Busic v. United States, supra.*

For other contradictory conclusions compare the language in *Whalen* with that of the decisions cited in the foregoing opinion in the instant case.

Double Jeopardy Clause when cumulative punishment for the identical crime is imposed contrary to the intent of the Congress. Here, we are confronted with the question of the scope of the Double Jeopardy Clause when cumulative punishment is meted out for the "same offense" consistent with the will of the General Assembly. In view of this governing distinction, we cannot apply to this case certain conclusions and statements in the various opinions in *Whalen* which we find ambiguous, to say the least, when read in the light of previous opinions of the Supreme Court which it has not renounced.

The guarantee of the Double Jeopardy Clause existed long before it was institutionalized in the Fifth Amendment. It arose to prominence to mitigate the harshness and severity of the punishment prescribed for the various common–law felonies and as a means to diminish "the danger of governmental tyranny." Sigler, *A History of Double Jeopardy*, 7 Am.Jur.L.Hist. 283, 293, n.57 (1963); Note, 57 Yale L.J. 132, 133 (1947). While at common law the protection was limited to the pleas of *autrefois attaint* (former pardon), *autrefois convict* (former conviction), and *autrefois acquit* (former acquittal), which protected against multiple prosecutions, the protection against multiple punishment was recognized early on in this country. In *Ex Parte Lange*, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873), it was stated:

> "If we reflect that, at the time this maxim came into existence, almost every offense was punished with death or other punishment touching the person, and that these pleas are now held valid in felonies, minor crimes, and misdemeanors alike, and on the difficulty of deciding when a statute under modern systems does or does not describe a felony when it defines and punishes an offense, we shall see ample reason for holding that the principle intended to be asserted by the constitutional provision must be applied to all cases where a second punishment is attempted to be inflicted for the same offense by a judicial sentence.

> "For of what avail is the constitutional protection against more than one trial if there can be any number of sentences pronounced on the same verdict? Why is it that, having once been tried and found guilty, he can never be tried again for that offense? Manifestly it is not the danger or jeopardy of being a second time found guilty. It is the punishment that would legally follow the second conviction which is the real danger guarded against by the Constitution. But if, after judgment has been rendered on the conviction, and the sentence of that judgment executed on the criminal, he can be again sentenced on that conviction to another and different punishment, or to endure the same punishment a second time, is the constitutional restriction of any value? Is not its intent and its spirit in such a case as much violated as if a new trial had been had and, on a second conviction, a second punishment inflicted?

> "The argument seems to us irresistible, and we do not doubt that the Constitution was designed as much to prevent the criminal from being twice punished for the same offense as from being twice tried for it."

This protection was recently reaffirmed in *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 655 (1969).

The primary responsibility for safeguarding this protection, as with any of the constitutional mandates, lies with the Judiciary. This fundamental principle has existed unquestioned since the birth of our federal system.

> "It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule. If two laws conflict with each other, the courts must decide on the operation of each.

> "So if a law be in opposition to the constitution; if both the law and the constitution apply to a particular case, so that the court must either decide that case conformably to the law, disregarding the constitution; or conformably to the

constitution, disregarding the law; the court must determine which of these conflicting rules governs the case. This is of the very essence of judicial duty."

*Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177–178, 2 L.Ed. 60, 73–74 (1803). To accept the State's contentions regarding the bounds of the Double Jeopardy Clause would require this Court to abdicate its constitutional responsibility and remove from our fundamental system of checks and balances the most effective limitation on legislative power–judicial review.

It is argued that the differences between punishment for the same offense via the vehicle of two statutes and enhanced punishment by one statute, which is clearly constitutional, is illusory. We disagree. Punishment for the same offense via two separate statutes does more than merely cumulate punishment for that one offense. It has profound collateral effects on parole considerations, future treatment as an habitual offender, and may lead to harsher sentences for later offenses. See Schwartz, *Multiple Punishment for the "Same Offense": Michigan Grapples with the Definitional Problem,* 25 Wayne L.Rev. 825 (1979). These differences are hardly illusory.

Moreover, if the aegis of the Double Jeopardy Clause in this substantive area extends only to acts of prosecutors and courts, 100 S.Ct. at 1441 (Blackmun, J., concurring) may this not have a "spillover" effect into multiple prosecution cases? Can the Legislature specifically negate the application of the rule of collateral estoppel, since it apparently was intended to protect against abuses in prosecutorial discretion? See *Ashe v. Swenson,* 397 U.S. 436, 445, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469, 476 n. 10 (1970). Since it may punish doubly in one trial, can the Legislature require multiple trials for various charges arising from the same offense? And if the Legislature may impose double punishment for the same offense, why not triple or quadruple punishment for the same offense?

We are of the opinion that the Double Jeopardy Clause was intended to prevent double punishment regardless of the procedural context in which it is found. We can find no sound basis, in *Whalen* or elsewhere, to exempt the Legislature from adherence to this constitutional doctrine in the instant case. Multiple sentences in the same trial for the same act are equally as abhorrent to the constitutional guarantee, in our view, as multiple sentences for the same act resulting from multiple trials.

We are not convinced that *Whalen* controls the instant case in view of the ambiguities contained therein which we find in unexplained conflict with prior double jeopardy principles which we thought settled. We are unwilling to abandon those principles until the United States Supreme Court has more clearly and definitely abandoned them.[6]

Nevertheless, the fact that we have found *Whalen* to be distinguishable does not lessen its effect on our construction of the *Blockburger* rule. In the foregoing opinion, we concluded that the *Blockburger* rule was a rule of substantive law for determining whether two statutes proscribed the "same offense" for double jeopardy purposes. This, we thought, was consistent with the great weight of authority on this subject. Compare *Hunter* with *Simpson v. United States, supra*; *Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977); *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); and *Gavieres v. United States,* 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed.2d 489 (1911). In *Whalen*, however, the Supreme Court has declared that the rule enunciated in *Blockburger* is not a substantive rule of law; rather it is "a rule of statutory construction", 100 S.Ct. at 1438.

---

**6.** Certainly Article I, § 8 of the Delaware Constitution, which states that "no person shall be for the same offense twice put in jeopardy of life and limb . . .", and Article I, § 7, which provides that "[i]n all criminal prosecutions . . . the accused . . . shall not . . . be deprived of life, liberty or property, unless by the law of the land", would have application in cumulative punishment cases such as this. Because of the construction we have placed on the federal constitutional provisions, however, we need not decide the scope of these provisions at this time.

■ While the reasons for this somewhat sudden shift in emphasis are obscure we are, nevertheless, bound to follow the Supreme Court's construction of its own case law. That does not mean, however, that we may not adopt a *Blockburger*–like rule of substantive law to determine when two sentences constitute punishment for the "same offense". Indeed, we note that the rule in *Blockburger* was drawn from a rule of substantive law for determining whether punishment for the "same offense" in multiple prosecution situations violates the principles of double jeopardy. See *Morey v. Commonwealth*, Mass.Supr., 108 Mass. 433 (1871); *Commonwealth v. Roby*, 29 Mass.Supr. 496, 12 Pickerings' Rep. 496 (1832); *People v. Goodwin*, N.Y.Supr., 18 Johns.Rep. 187 (1820). Compare 11 *Del.C.* § 208(1)(b)(1).[7] We therefore conclude that multiple sentences at the same trial may not be had unless the required statutory elements of proof for each offense contains an element that the other does not.

## II.

Turning now to the motion for clarification regarding the proper resentencing procedures to be adopted under the foregoing opinion in the light of the above quoted statements in *Davis*:

As to the sentencing procedures under *Davis* (and *Bey v. State*, Del.Supr., 402 A.2d 362 (1979), they do not apply to a *Hunter* case. We distinguished *Davis* for prosecutorial purposes and it is also different from *Hunter* for sentencing purposes.

In *Davis*, we held that "defendant's conviction under the weapons statute [§ 1447] cannot stand," 400 A.2d at 297; here, however, the § 1447 conviction does stand and, indeed, it is affirmed as part of our ruling in this appeal. In *Davis*, only the "conviction for attempted first–degree robbery remain[ed]." 400 A.2d at 297, and the case was remanded for resentencing on that charge. And since that was the one conviction which remained, obviously it was the only basis on which a sentence could be imposed. But in *Hunter*, we have determined that *both* convictions remain and the State has an election on whether to proceed under § 613 or § 1447 (but not both).

■ The arguments have, however, identified one modification which should be made to a *Davis*–type sentencing procedure, and it is appropriate to make it here. In *Davis* we held that:

"At resentencing, the Trial Judge will not be limited to the mandatory minimum sentence imposed initially for the attempted robbery conviction, but the sentence may not exceed the combined duration of the two terms imposed before this appeal. This limitation appears to comply with the requirements imposed by *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)."

400 A.2d 297.

In *North Carolina v. Pearce*, the United States Supreme Court held that the power of the State to resentence a defendant to an increased term over that originally imposed, without contravening the guaranty against double jeopardy, arises only when the defendant's original conviction and sentence have been "nullified," and a second conviction following a retrial has been obtained. We are now persuaded that such circumstances are so factually and legally different from those found in a *Davis*–type case that *Pearce* does not provide a useful guide in the sentencing process.

---

7. 11 *Del.C.* § 208(1)(b)(1) states:

"§ 208. When prosecution is barred by former prosecution for different offense.

"Although a prosecution is for a violation of a different statutory provision or is based on different facts, it is barred by a former prosecution in a court having jurisdiction over the subject matter of the second prosecution under the following circumstances:

"(1) The former prosecution resulted in an acquittal which has not subsequently been set aside or in a conviction as defined in § 207 of this title and the subsequent prosecution is for:

"b. The same conduct, unless:

"1. The offense for which the defendant is subsequently prosecuted requires proof of a fact not required by the former offense and the law defining each of the offenses is intended to prevent a substantially different harm or evil, or * * *."

The proper rule to apply is the one which prohibits increasing a sentence after a defendant has commenced to serve it. In *United States v. Turner*, 7 Cir., 518 F.2d 14 (1975), the Court said:

"The law is well settled that increasing a sentence after the defendant has commenced to serve it is a violation of the constitutional guaranty against double jeopardy. [citations omitted]"

Compare *Chandler v. United States*, 5 Cir., 468 F.2d 834 (1972); *United States v. Welty*, 3 Cir., 426 F.2d 615 (1970); *United States v. Adams*, 6 Cir., 362 F.2d 210 (1966); *Commonwealth v. Brown*, 455 Pa.Supr., 274, 314 A.2d 506 (1974); 4 Wharton's Criminal Procedure (12 ed.) § 611.

Thus, any post–appeal sentence imposed in a *Davis*–type case may not exceed the sentence originally imposed for the conviction which remains, if the defendant has begun to serve the sentence. Any ruling to the contrary in the *Davis* opinion is abandoned.

\* \* \*

McNEILLY, Justice (concurring in part; dissenting in part):

I concur in Part II of the Court's foregoing Opinion on the Motion for Reargument and Clarification. Otherwise, I join in the following dissenting opinion of Justice Quillen.

\* \* \*

QUILLEN, Justice, dissenting:

There is no more confusing area of criminal and constitutional law than the issue of double jeopardy and the related problems of statutory construction. The majority opinion tackles the thicket boldly and I depart from the views it expresses with respect. At the time of the original decision in this case on March 14, 1980, I expressed the view that the result reached by the opinion

of the Chief Justice on behalf of the Court "[was] constitutionally mandated under current standards." I now find it necessary to withdraw that concurring opinion and to take a most hesitant different view from that of the majority in light of the recent decision of the United States Supreme Court in *Whalen v. U. S.*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). I enter the fray hesitantly because, unlike Mr. Justice Rehnquist, I find the double jeopardy opinions of his Court far from clear.[1]

I

Initially, I am still troubled by the restricted approach taken by the majority in this case. The opinion is limited in that it considers in isolation only the statutory sections involved in the instant appeal. My fear is that the limited and isolated, subsection by subsection, approach may, in this area, be counterproductive in light of a general purpose of the Code "[t]o differentiate upon reasonable grounds between serious and minor offenses and to prescribe proportionate penalties therefor." 11 *Del.C.* § 201(4). I therefore express concern and suggest that we, perhaps uncharacteristically, should at least attempt to take a broader sweep in an effort to assure a more orderly and more rational administration of the penal provisions as a whole.

Specifically, the appeal in this case raises a question factually akin to that faced by this Court in *Davis v. State*, Del.Supr., 400 A.2d 292 (1979) and *Bey v. State*, Del.Supr., 402 A.2d 362 (1979). In those cases, as a matter of statutory construction, this Court determined that, "[w]hen it is alleged that a robber displayed a deadly weapon", the General Assembly "intended to replace the weapons statute, § 1447, with the special aggravated crime of first-degree robbery,

---

1. Justice Rehnquist summarized *Whalen* on double jeopardy in the following manner: "[S]ix Members of this Court held that Congress' intent to impose cumulative punishments at a single criminal proceeding completely controlled the question of double jeopardy. . . Three other Members of this Court, including myself, argued that the permissibility of

cumulative punishments in the same criminal proceeding presented no double-jeopardy question whatsoever." *Busic v United States*, —— U.S. ——, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980). Not surprisingly, his summary conclusions lean as strongly as possible to his own point of view on the merits.

§ 832". *Davis v. State, supra,* 400 A.2d 296, 297; 11 *Del.C.* § 832(a)(2), § 1447.[2] Thus, the convictions under § 1447 were reversed.

In the present case, the Court determines that convictions for assault in the first degree under 11 *Del.C.* § 613(1) and for possession of a deadly weapon during the commission of a felony under 11 *Del.C.* § 1447 can stand. But the Court also holds that the defendant cannot be subjected to two sentences on the dual convictions due to the constitutional limitation of double jeopardy which proscribes multiple punishments for the same offense. Thus, the case is remanded for resentence on one of the convictions with the selection at the State's option.

I agree there is nothing to suggest that the General Assembly intended that either statute was to be deprived of its status as a basis of prosecution due to its relation to the other and that both convictions can withstand constitutional attack. But, even accepting arguendo the conclusion of the majority as to double jeopardy and resentencing, I do not think *Davis* should be ignored. I note that: the *Davis* case has been urged by the defense as a ground for reversal; it is frequently difficult in an isolated case to appreciate the impact of a decision on the general administration of the codified law; and the disposition here leaves two viable approaches in similar situations with serious anomalous results. I think the State court of last resort, sitting en banc, with judicial responsibility for uniformity in criminal law interpretation,

should, as urged by the State, reconsider *Davis* on its merits in this appeal.[3]

II

Since, in this case, we unanimously have decided, quite correctly in my view, that the General Assembly intended to authorize simultaneous prosecution and cumulative punishment for assault in the first degree under 11 *Del.C.* § 613(1) and for possession of a deadly weapon during the commission of a felony under 11 *Del.C.* § 1447, we must face the difficult problem of double jeopardy.

In the initial opinion in this case, the majority made a noble effort to follow federal law in reaching its conclusion. See, for example, *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 665 (1969), *Simpson v. United States,* 435 U.S. 6, 11–12, 98 S.Ct. 909, 913, 55 L.Ed.2d 70, 76 (1978); *Jeffers v. United States,* 432 U.S. 137, 150, 97 S.Ct. 2207, 2216, 53 L.Ed.2d 168, 180 (1977). The conclusion that double jeopardy proscribed double punishment, which had been conceded by the State in the en banc oral argument, must, as recognized by the majority, be re-examined in the light of *Whalen.* It is clear from *Whalen* that four Justices of the United States Supreme Court [Justices White, Blackmun, Rehnquist and Chief Justice Burger] would hold that the double jeopardy limitation of the federal constitution imposed on the states by the Fourteenth Amendment does not prohibit two sentences in this case.

---

2. For present purposes it is not necessary to further complicate the issues by considering that *Davis* involved attempted robbery. But see *Smith v. State,* Del.Supr., 412 A.2d 331 (1980).

3. In this area of the law, perhaps all anomaly cannot be eliminated. But anomalous results created by statutory construction, as in *Davis,* should give one pause and cause one to question whether the results were truly legislatively intended. Given the position of the majority, it is neither necessary nor desirable to engage in a reconsideration of *Davis* in this dissent. But, lest this view be thought frivolous, I note the following questions which might be included in a reconsideration. With regard to temporal

sequence, did not the same Code that enacted the robbery statute simultaneously enact the weapons statute? Was not the legislative intent clearly expressed in the 1976 amendment adding the present § 1447(c) providing for consecutive sentencing? Is not the 3 year mandatory sentence for the first offense of robbery in the first degree, added by amendment in 1975, applicable even when a deadly weapon is not apparently displayed? Was not the statutory construction in *Davis* influenced by jeopardy concepts of double punishment? Does not *Simpson v. United States,* 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978) relied on in *Davis* relate only to dual sentencing? Compare *Busic v. United States, supra.*

It is not clear from the five member majority decision in *Whalen* what those members would hold on the instant question. Justice Rehnquist's summary notwithstanding, I find it difficult to believe that Justices Brennan and Marshall held or would hold "that Congress' intent to impose cumulative punishments at a single criminal proceeding completely controlled the question of double jeopardy." That leaves three Justices [Justices Stewart, Stevens and Powell].

It seems to me that certain things can be said about the majority opinion in *Whalen*. First, it should be remembered that the Court was deciding a case, not writing a treatise. Second, in achieving a majority, a worthwhile task, the opinion appears properly to be one of accommodation as perhaps best illustrated by the comment that "[t]he Double Jeopardy Clause *at the very least* precludes federal courts from imposing consecutive sentences unless authorized by Congress to do so." 445 U.S. at 689, 100 S.Ct. at 1436, 63 L.Ed.2d at 722 (emphasis added). Third, while the Court "is not [ready] to say that there are not constitutional limitations upon [Congress' 'power to define criminal offenses and to prescribe the punishments to be imposed upon those guilty of them']", its citations to support such limitations were narrowly selected with design and did not extend to the double jeopardy situation present in this case. See ftnt. 5, 445 U.S. at 689, 100 S.Ct. at 1436, 63 L.Ed.2d at 722. Fourth, the Court is searching for and open to different solutions relating to existing concepts. For example, there is a clear recognition of the legislative role under the constitutional principle of separation of powers and a clear suggestion of a problem of judicial usurpation. This recognition could well lead to a different approach in defining "same offense" than the elemental approach of recent years.

As I read *Whalen*, the Court has taken a turn, not ninety degrees, but decipherable. There has been a recognition that recent opinions have been "[demanding] more of the Double Jeopardy Clause than it is capable of supplying." Western & Drubel, Toward a General Theory of Double Jeopardy, 1978 *Supreme Court Review*, 81, 113. Furthermore, as I see it, there is implicit in the *Whalen* majority some support for the proposition that cumulative punishments may be imposed in a single trial if Congress defined the offenses separately and authorized cumulative punishments. See also *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 153 L.Ed.2d 187 (1977). Based on this reading, which I hope rises above blind speculation to at least educated surmise, I conclude the concept of double jeopardy as embodied in the Fourteenth Amendment of the United States Constitution does not proscribe the consecutive punishments which were imposed in this case.[4]

Finding no jeopardy violation, I am not compelled to decide the appropriate procedure for resentencing.[5] As to other points raised by the appeal, I join in the conclusions of the majority and find no reversible error. Accordingly, I would affirm the judgment of the Superior Court.

---

4. This case has been argued on the basis of the Federal Constitution. Barring special circumstances, such as federal constitutional interpretation shocking to the conscience of civilized legal scholarship or diverse historic development, it is certainly preferable that interpretations of corresponding provisions in state and federal constitutions, which share a common history, be the same. On the instant record, I do not find any special circumstances present in this case. This is not to say, however, that there could not be State constitutional limits to some cumulative punishment cases. But it should be emphasized that this case has been submitted in the context of federal law.

5. Compare *Busic v. United States, supra*, ftnt. 19, —— U.S. at ——, 100 S.Ct. at 1756, 64 L.Ed.2d at 393.