**Geraldine D. WILSON, Plaintiff,**

v.

**Carl KING, et al., Defendants.**

C.A. No. 95C–07–007.

Superior Court of Delaware,
Kent County.

Submitted: Oct. 30, 1996.

Decided: Jan. 26, 1996.

Geraldine D. Wilson, Dover, pro se Plaintiff.

James Prendergast, Wilmington, for Defendants.

## OPINION

TERRY, Judge.

The plaintiff, Geraldine Wilson, was allegedly injured on July 7, 1993 when a gasoline hose exploded at a service station and she was covered by gasoline which caused burns and temporary blindness.

Ms. Wilson understood that the statute of limitations would expire on Friday, July 7, 1995 and apparently had been unable to procure local counsel to represent her in this matter. She consulted with a friend, Abdul Muhammad, who is a lawyer not admitted to practice in Delaware. He prepared a complaint for her to sign and file pro se. They arranged to meet at the Kent County Courthouse on July 7, at 3:30 p.m. where Ms. Wilson appeared at that time. Meanwhile Mr. Muhammad was en route from Washington D.C. to meet her but missed a turn and ended up continuing on route 95 toward Wilmington. He eventually got on route 13 southbound where he encountered a traffic jam which delayed him for a considerable period of time. Between 4:30 and 4:45 he called the Prothonotary's [1] office in the Kent County Courthouse and spoke to a clerk there. Another clerk had previously seen Ms. Wilson waiting in the office and had talked with her, finding out that she was there to file a complaint. During that conversation the clerk told Ms. Wilson that the Prothonotary's office closed at 5 p.m. and that her complaint either had to be filed by a

---

1. The Prothonotary is the clerk of the Superior Court and the office receives and files complaints for that Court.

Delaware attorney or by herself, pro se. When that clerk heard the other clerk on the telephone mention Ms. Wilson's name, she took over the call.

According to the clerk, Mr. Muhammad told her that he was at Tybout's Corner and he was coming to file a complaint. He asked if she would accept a fax and was told the office would not. Mr. Muhammad then said that he did not believe that he could make it there by five and asked if she would be there after five; he was told that no one would be in the Prothonotary's office after five because they left at five.

The clerk also testified that Mr. Muhammad did not tell her that this was the last day to file the complaint nor did he inquire if there existed an after hours filing procedure. On the other hand she does not recall affirmatively telling him that there was an after hours filing procedure.

The Prothonotary testified that there is a system whereby papers can be filed and clocked in at the Prothonotary's office after it closes at 5 p.m. and that this mechanism would probably have been available until 11 p.m. when the Courthouse security people go off duty.[2]

Mr. Muhammad testified that he talked to two clerks in the Prothonotary's office on the telephone and asked one of them whether there was anything he could do since he had to file the complaint on July 7. He said he was told that they were getting ready to close the office and that there was nothing he could do. He testified that he did not know there was a procedure for filing complaints after the office closed at 5 p.m. in Dover and also that no one with whom he spoke at the Prothonotary's office told him about the after hours procedure. Ms. Wilson was also not told of the after hours filing procedure. She went home at five o'clock when the office closed for the day.

Mr. Muhammad arrived at the Courthouse at around 5:30 p.m. and saw a person who looked like a custodian in a grey uniform near the front door. He asked the person (it was later established that county custodians do not wear the color uniforms that this person had) if the Courthouse was open and was told that the Courthouse was closed. He did not try the door or ask to speak to any official who might be inside the Courthouse. He then met Ms. Wilson later that evening and they discussed what they should do and eventually decided to file the complaint the following Monday. The complaint was filed on Monday, July 10, 1995.

The defendant has pled the statute of limitations as a defense and has moved for judgment on the pleadings pursuant to Rule 12(c) of the Superior Court Rules of Civil Procedure. Two hearings were subsequently held thereby requiring me to dispose of the matter as if it were a motion for summary judgment. I have therefore considered the testimony taken at the hearings, which I have summarized above, as well as the pleadings in coming to my decision.

The defendant's position is that under settled case law the statute of limitations enacted by the General Assembly is absolute and courts are not allowed to engraft exceptions to it because of perceived hardship. This principle was explained clearly in *Watts v. Hanson*, Del.Super., C.A. No. 94C–05–012, 1994 WL 714001, Graves, J. (October 27, 1994) (Memorandum Opinion) as follows:

> Generally, statutes of limitations are not open to judicial construction if they are unambiguous. The justification behind disallowing the creation of new exceptions to statutes of limitations dates back to 1907 when the Supreme Court in *Lewis v. Pawnee Bill's Wild West Co.*, Del.Supr., 66 A. 471 (1907), concluded that, "[w]here the Legislature has made no exception to the positive terms of a statute, the presumption is that it intended to make none, and it is not the province of the court to do so."

The applicable statute for personal injury actions provides that "no action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of two (2) years from the date upon which it is claimed that such alleged

---

**2.** Security personnel in the Courthouse after hours are authorized to unlock the Prothonotary's office in order to allow persons to clock in documents on a time stamp machine and leave them in a bin.

injuries were sustained ...." 10 *Del.C.* § 8119. Since the accident occurred on July 7, 1993, the last day for filing suit was Friday, July 7, 1995. Super.Ct.Civ.R. 6(a); *Molina v. Anchor Motor Freight, Inc.,* Del.Super., 92 A.2d 294 (1952).

As a result of the two hearings which I held and after considering the other material filed by the defendant, I find that the following facts have been established.

1. The plaintiff and Mr. Muhammad arranged to meet at the Kent County Courthouse at 3:30 p.m. on July 7, 1995 to file a complaint.

2. They knew it was the last day prior to the expiration of the statute of limitations.

3. Plaintiff arrived at the courthouse around 3:30 p.m. but Mr. Muhammad, who had the complaint, got lost and then was delayed in a traffic jam. He did arrive at the courthouse at 5:30 p.m. that day but the Prothonotary's office had already closed.

4. Prior to the time the office closed the plaintiff made it known to a clerk that she was there to file a complaint and she was waiting for her attorney. Mr. Muhammad called the Prothonotary's office and spoke to the same clerk around 4:30 to 4:45 p.m.. He told her that he was on the way to file a complaint and asked if the office would be open after 5 p.m. since he did not think he could get there before then. He was told that the office closed at 5 p.m. and that no one would be there after five.

5. Mr. Muhammad says that he told the clerk with whom he spoke that July 7, was the last day he could file the complaint. The one clerk who testified says that she was never told this. Mr. Muhammad also said that he asked if there was anything they could do to make sure that she got her papers in and was told that "it just was not possible and Court would be closed." (TR–8)[3] The clerk also had *no recollection of this* specific conversation. The clerk also testified that she was never asked if there was an after hours filing procedure. It is not unusual for memories to be less than exact regard-

ing conversations under these circumstances. I do not find that the plaintiff has proven by a preponderance of the evidence that the clerk was told clearly that July 7 was the last day to file the complaint nor was she asked specifically if there was any procedure to file after hours. If she had been asked that question, there is no reason why she would not have correctly answered it.

6. I find that the clerk was told that plaintiff wanted to file a complaint on July 7 and that the person delivering the complaint would arrive after 5 p.m. The clerk was asked if anyone would be in the Prothonotary's office to receive the complaint after 5 p.m. and she responded that "no, no one would be here in the Prothonotary's office after five. We leave at five." (TR–44). I further find that the clerk did not inform either the plaintiff or Mr. Muhammad that there was an after hours procedure for clocking in complaints at the Prothonotary's office after 5 p.m.

7. I further find that when the Prothonotary's office closed, plaintiff went home and Mr. Muhammad arrived shortly thereafter. He was told by someone who looked like a maintenance man outside the courthouse that it was closed. He then went to plaintiff's home and gave her the complaint which she signed and filed on Monday, July 10, which was the next day that the Prothonotary's office was open.

■ Although the oft-stated policy is that statutes of limitations are to be strictly construed because the General Assembly has evinced its intent to bar claims filed after the stated time, the courts have also recognized their inherent authority, under certain limited circumstances, to "engraft implied exceptions upon the statute of limitations where the legislative purpose of the statute is not contravened." *Mergenthaler v. Asbestos Corp. of Am.,* Del.Super., 500 A.2d 1357, 1365 (1985); *Watts v. Hanson,* Del.Super., C.A. No. 94C–05–012, 1994 WL 714001, Graves, J. (October 27, 1994) (Memorandum Opinion). The rationale of these cases hinges on the

---

**3.** "TR" indicates a reference to the transcript of the hearing on defendant's motion for summary

judgment on September 29, 1995.

concept that statutes of limitations should be tolled where a paramount authority prevents the exercise of a legal remedy by a plaintiff. Both of the cases just cited hold that a court is such a paramount authority and the *Mergenthaler* opinion recognized two elements which must be proven. 500 A.2d at 1365. First, the action of the court itself prevents the exercise of the legal remedy and second, the plaintiff has acted with due diligence. *Id.*

■ I am aware of no Delaware cases which specifically treat the circumstances of the case at bar. However, a number of opinions do exist where a party has failed to file a timely appeal. In all of these cases the courts have adhered to the principle that:

> where an appellant has done all that is required of him in seeking review, and his default is "occasioned by court-related personnel, his petition for review will not be denied." *Bey v. State,* Del.Supr., 402 A.2d 362 (1979).

In *Bey* the court noted that the defendant was prevented from perfecting his appeal "by both action and inaction of state agencies." 402 A.2d at 363; *see also Delcampo v. Wilmington Autoworks,* Del.Super., 1990 WL 63820, Gebelein, J. (April 26, 1990) (Memorandum Opinion); *Petrucelli v. McFarland,* Del.Super., 1989 WL 41700, Taylor, J. (March 20, 1989) (Order), (where defendant relied on an erroneous notification sent by court personnel containing the wrong date for appeal); *Campbell v. Jay–Dee Store,* Del. Supr. No. 178, 1986, 1986 WL 18355, Christie, C.J. (December 5, 1986), (where the appeal papers were filed with the Justice of the Peace Court instead of with the Prothonotary and the appellant claimed that his mistake was occasioned by erroneous advice given by court personnel).

■ Another principle which has been applied by the court in these types of cases is that:

> When a party fails to perfect timely its appeal "a jurisdictional defect is created which may not be excused in the absence of unusual circumstances which are not attributable to the appellant or the appellant's attorney."

*Carr v. State,* Del.Supr., 554 A.2d 778, 779 (1989) p. 779 (quoting *Riggs v. Riggs,* Del. Supr. 539 A.2d 163, 164 (1988)).

■ Although the above opinions deal with appeals from lower courts to higher courts which were not filed on time, the situation there is analogous to the case at bar. In the appeal cases not only a court rule but also a statute established the time for filing the appeal and, hence, the courts recognized that the failure to file a timely appeal amounted to a jurisdictional defect. Nevertheless, the courts recognized an implied exception and extended the statutory time limits in respect to cases which fell within the exception.

I can perceive no difference between the appeal cases and the instant case since both involve the failure to file a pleading within a statutorily created period of limitations. Therefore, I will apply the principles discussed above to the facts of this case.

I conclude that when court personnel told the plaintiff and her agent, Mr. Muhammad, that the Prothonotary's office closed at 5 p.m. and no one would be there after 5 p.m., the court personnel failed to give her complete and accurate information and thereby inadvertently misled her. Specifically, when the court personnel knew that plaintiff was in the office to file a complaint and knew that someone was to deliver the complaint shortly after the 5 p.m. closing time, the plaintiff should have been informed that there was a procedure by which the complaint could have been clocked in and filed after hours. Instead, the plaintiff was told that the office would close at 5 p.m. and no one would be in the Prothonotary's office after then which, while true, was also incomplete in the sense that a procedure was in place which would permit a paper to be filed in that office after 5 p.m. Thus, under these unusual circumstances, the default was occasioned by court related personnel.

I further find that plaintiff acted with due diligence. Although she waited until the last day to attempt to file the complaint, she appeared at the courthouse on that day and her agent attempted to deliver the complaint to her during office hours but, due to unforeseen circumstances, was prevented from do-

ing so. Nevertheless, he arrived at the courthouse that day to deliver the complaint and, in fact, the complaint would have been filed on time if he had not been given incomplete information by a court clerk which misled him though no fault of his own.

 Statutes of limitations are enacted to require plaintiffs to use diligence in bringing suits so that defendants are not prejudiced by undue delay. I find in this case that to permit the complaint to be filed does not contravene the public policy underlying the statute because plaintiff acted diligently; suit was not filed on time because of incomplete (and thus erroneous) information given by court personnel; and plaintiff diligently filed her complaint on the next day that the Prothonotary's office was open.

Defendant's motion for judgment on the pleadings is *denied.*