IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KATHRYN MENNEN, SARAH MENNEN, ALEXANDRA MENNEN, SHAWN MENNEN, and JOHN MENNEN, | § § § § | No. 1, 2016 |
| | § | |
| Plaintiffs Below-Appellants/Cross-Appellees, | § § | Court Below—Court of Chancery of the State of Delaware |
| | § | |
| v. | § | C.A. No. 8432 |
| | § | |
| FIDUCIARY TRUST INTERNATIONAL OF DELAWARE, in its capacity as the individual trustee of the TRUST ESTABLISHED BY GEORGE S. MENNEN FOR THE BENEFIT OF GEORGE JEFF MENNEN, a Delaware trust, | § § § § § § § § § § | |
| | § | |
| Defendant Below-Appellee, | § § | |
| | § | |
| v. | § | |
| | § | |
| GEORGE JEFF MENNEN, | § | |
| | § | |
| Defendant Below-Cross-Appellant. | § § | |

Submitted: September 21, 2016
Decided: October 11, 2016

Before **STRINE**, Chief Justice; **HOLLAND** and **SEITZ**, Justices.

Upon appeal from the Court of Chancery. **REMANDED**.

Kevin G. Abrams, Esquire, J. Peter Shindel, Jr., Esquire, Matthew L. Miller, Esquire, Abrams & Bayliss LLP, Wilmington, Delaware, Herbert J. Stern, Esquire, Kevin M. Kilcullen, Esquire, Brian J. DeBoer, Esquire, Stern & Kilcullen LLC, Florham Park, New Jersey, Attorneys for Plaintiffs Below-Cross Appellants/Cross Appellees.

Brian C. Ralston, Esquire, Aaron R. Sims, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware, Carol A. Harrington, Esquire, Jared R. Cloud, Esquire, Daniel R. Campbell, Esquire, McDermott Will & Emery LLP, Chicago, Illinois, Attorneys for Defendant Below-Appellee.

Jeffrey S. Cianciulli, Esquire, Weir & Partners LLP, Wilmington, Delaware, Ralph T. Lepore, III, Esquire, Benjamin M. McGovern, Esquire, Holland & Knight LLP, Boston, Massachusetts, Attorneys for Defendant Below, Cross-Appellant.

**HOLLAND**, Justice:

At issue in this appeal is whether five beneficiaries of a Delaware trust—John Mennen ("John"), Kathryn Mennen, Shawn Mennen, Sarah Mennen, and Alexandra Mennen (the "Beneficiaries")—may recover on their $88 million judgment against George Jeff Mennen ("Jeff"), the brother of John and uncle to the other Beneficiaries. That judgment arises from Jeff's alleged bad faith and willful misconduct as individual trustee of a trust established by the father of John and Jeff for the benefit of John and his issue (the "Trust"). That damages judgment is the subject of Jeff's cross-appeal in this matter.

A Master held that the spendthrift clause in Jeff's Trust precludes the Beneficiaries from obtaining any relief against Jeff's interest in Jeff's Trust (the "Spendthrift Ruling"). The Court of Chancery held that, because the Beneficiaries' notice of exceptions to the Master's final report on its Spendthrift Ruling was purportedly one-week late, the Beneficiaries forfeited their right to challenge the Spendthrift Ruling. In this proceeding, the Beneficiaries appeal both the procedural and the substantive rulings.

This opinion only addresses the procedural claim. In that regard, the Beneficiaries argue that the Court of Chancery committed two separate legal errors when it determined that the Beneficiaries' notice of exceptions to the Master's final report on its Spendthrift Ruling was untimely. First, the Beneficiaries contend that the Court of Chancery erred when it determined that the Beneficiaries' claims

3

against Jeff's interest in Jeff's Trust were expedited for purposes of post-trial proceedings. Second, the Beneficiaries contend that the Court of Chancery erred by failing to address whether any untimeliness in the filing of the Beneficiaries' notice of exceptions was the result of excusable neglect.

We have concluded that both of the Beneficiaries' procedural arguments are correct. Therefore, this matter must be remanded to the Court of Chancery to consider the merits of the Beneficiaries' exceptions to the Master's Spendthrift Ruling.

### Facts Regarding Expedited Proceedings

Although the Master granted the Beneficiaries' motion to expedite on April 19, 2013, the Master did so to expedite resolution of whether the Trust's incumbent trustees had acted disloyally and were unfit to continue to serve. After the co-trustees resigned—Wilmington Trust Company ("WTC") on May 28, 2013, and Jeff following trial in February 2013—the parties and the Master returned to a non-expedited schedule to address the Beneficiaries' damages claims.

On November 1, 2013, Owen Roberts, the Trustee of Jeff's Trust,[1] filed a motion for summary judgment. He argued that 12 *Del. C.* § 3536 (the "Spendthrift Statute") barred recovery by the Beneficiaries against Jeff's interest in Jeff's Trust.

---

[1] Roberts served as the individual trustee of Jeff's Trust through trial and all post-trial proceedings. Prior to this appeal, Fiduciary Trust International of Delaware replaced Roberts as trustee of Jeff's Trust.

4

After briefing and oral argument, the Master issued a draft report on January 17, 2014 recommending that the Court grant Jeff's Trust's summary judgment motion (the "Draft SJ Report"). In the Draft SJ Report, the Master stayed exceptions to that Report until the issuance of a draft report on the merits, which occurred nearly eleven months later, on December 8, 2014.

The Beneficiaries filed exceptions to the Draft SJ Report on December 15, 2014 and an opening brief in support on January 23, 2015. Jeff's Trust filed an answering brief on February 13, 2015. On April 24, 2015, more than two years after the Complaint was filed, and nearly fifteen months after the Draft SJ Report, the Master issued the Final SJ Report, which maintained each of the key positions in the Draft SJ Report.

On May 4, 2015, ten days after the Final SJ Report was issued and in accordance with new Court of Chancery Rule 144(d)(1), the Beneficiaries filed a notice of exceptions to the Final SJ Report (the "Beneficiaries' Exceptions") that repeated the Beneficiaries' December 15, 2014 exceptions to the Draft SJ Report. On May 15, 2015, Jeff's Trust filed a motion to strike the Beneficiaries' Exceptions on the grounds that the three-day deadline under Rule 144(d)(2) applied and, therefore, the Beneficiaries' Exceptions were untimely (the "Strike Motion").

After briefing and without oral argument, the Court of Chancery granted the Strike Motion. The entire Strike Order reads as follows: "This matter is expedited,

rendering the notice of exceptions untimely under the plain language of Rule 144(d)(1)." Having granted the Strike Motion, the Court of Chancery refused to consider the merits of the Beneficiaries' Exceptions to the Spendthrift Ruling and adopted the Master's Final SJ Report as an Order of that Court.

### *Proceedings No Longer Expedited*

In relevant part, Rules 144(c) and (d) state:

> (c)     Exceptions. -- Any party may take exception to a final report or a draft report. Exceptions to a draft report shall be heard by the Master and shall be addressed in the final report issued by the Master. . . .

> (d)     Schedule for taking and briefing exceptions. -- Unless otherwise agreed by the parties or directed by the Master or the Court, the following schedule shall govern . . .

> (1)     In actions that are not summary in nature or in which the Court has not ordered expedited proceedings, any party taking exception shall file a notice of exceptions within eleven days of the date of the report. . . .

> (2)     In actions that are summary in nature or in which the Court has ordered expedited proceedings, any party taking exception shall file a notice of exceptions within three days of the date of the report. The presiding Chancellor, Vice Chancellor, or Master shall promptly set a schedule for briefing on the exceptions, taking into account the need for summary or expedited resolution of the action.[2]

The Court of Chancery erred when it held that the expedited, three-day exceptions period of Rule 144(d)(2) governed the Beneficiaries' Exceptions instead

---

[2] Ct. Ch. R. 144(c)-(d).

of the normal eleven-day exceptions period under Rule 144(d)(1) because the record reflects that Beneficiaries' remaining money damages claim against Jeff's interest in Jeff's Trust was not expedited.[3]

Jeff's Trust filed its summary judgment motion in November 2013. The Draft SJ Report was issued in January 2014. The exceptions period for the Draft SJ Report was stayed by nearly a year until the Draft Post-trial Report was issued in December 2014. The Final SJ Report was not issued until April 2015—fifteen months after the Draft SJ Report. WTC had resigned as trustee twenty-three months earlier; Jeff had resigned thirteen months earlier.

Jeff's Trust never argued that expedition was required for exceptions to the Draft SJ Report or the Final SJ Report. The Beneficiaries' Exceptions to the Draft SJ Report were briefed by the Beneficiaries and Jeff's Trust on a non-expedited schedule that was longer than provided in Rule 144(d)(1). In addition, Jeff's Trust's exceptions to the Final Merits Report were briefed on a non-expedited schedule.

The record reflects that none of the parties in this litigation believed that the Beneficiaries' money damages claims against Jeff's Trust were expedited until Jeff's Trust filed the Strike Motion. The Strike Order disregards the course of conduct by the Master and the parties to the litigation—including Jeff's Trust—that the

---

[3] Although the Strike Order mistakenly cited Rule 144(d)(1), the Court of Chancery actually applied Rule 144(d)(2).

resignation and replacement of WTC and Jeff as trustees of the Trust had removed the original justification for expedition. In light of these undisputed facts, the Court of Chancery erred in holding that the litigation remained expedited and that Rule 144(d)(2) applied.

We recognize that Rules 144(d)(1) and (d)(2) can arguably be read to create a binary distinction between "actions that are summary in nature or in which the Court has ordered expedited proceedings" and "actions" that do not have those qualities. But that reading is not one that is compulsory or sensible. Rather, what the two subsections attempt to do seems plain. When an entire action involves a summary proceeding by statute, such as an action under 8 *Del. C.* § 220, then exceptions must be taken with alacrity in keeping with the statutory mandate for summary proceedings. And, when an action involves matters that the court itself finds demand expedited action, any exceptions from a Master's ruling addressing those matters must also be made with alacrity.

This reading is not only a common sense interpretation, it is supported by the language of subsection (d)(2) recognizing that not all summary or expedited matters are the same and that the degree of expedition should reflect what is at stake. That language gives the Court of Chancery discretion to set a briefing schedule on exceptions tailored to the issues before it. It may be that Rules 144(d)(1) and (d)(2) could be usefully amended to replace the words "in which the Court has ordered

8

expedited proceedings" with the words "as to issues as to which the Court has ordered expedited proceedings." But, the only reasonable reading of the Rules as they stand is the one we have set forth. Even further, if the Rules were to be read with less flexibility, then it was incumbent of the Court of Chancery to consider whether the action remained one that was expedited. As the record reflects, it was clear that the Master and the parties had long ago agreed that the action was no longer expedited and not one involving expedited proceedings. That error alone requires a reversal and remand to the Court of Chancery to address the merits of the Beneficiaries' Exceptions to the Spendthrift Ruling.

### Excusable Neglect

The Strike Order did not address the Beneficiaries' excusable neglect argument. In evaluating excusable neglect, the trial court generally focuses on two issues: (1) whether a party has demonstrated reasonable diligence; and (2) whether the opposing party will be improperly prejudiced by an extension.[4]

When a party has missed a scheduling deadline, the trial court may extend the deadline if the party's failure to meet it resulted from excusable neglect.[5] A finding of excusable neglect is appropriate when there is a "demonstration of good faith on

---

[4] The Final SJ Report did not significantly differ from the Draft SJ Report. Therefore, the Beneficiaries' exceptions to the Final SJ Report are almost identical to the exceptions the Beneficiaries filed in response to the Draft SJ Report. In the Court of Chancery, the Trustee conceded that it would suffer no prejudice if the Motion to Strike was denied.
[5] Ct. Ch. R. 6(b).

the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules."[6] Accordingly, excusable neglect is "neglect which might have been the act of a reasonably prudent person under the circumstances."[7]

The record reflects that the Beneficiaries acted in good faith and with reasonable justification in filing their exceptions within the period provided in Rule 144(d)(1) for two reasons. First, Rule 144 was amended effective January 1, 2015, and no precedent or commentary on the new Rule existed when the Beneficiaries filed their exceptions. The Beneficiaries reasonably expected that exceptions to a final report that was issued nearly fourteen months after the draft report would not be treated on an expedited basis.

Second, the Beneficiaries asserted that they were aware that Rule 144 had been revised. In fact, they contended that their counsel confirmed with the Register in Chancery that the new, eleven-day period under current Rule 144 would apply to exceptions to the Final SJ Report rather than the seven-day period under old Rule 144.

Because the Court of Chancery did not consider the excusable neglect argument, it never inquired whether this assertion in a brief supplied by counsel was

---

[6] *Dolan v. Williams*, 707 A.2d 34, 36 (Del. 1998).
[7] *Id.*

10

factually correct. For present purposes, however, the Trustee accepts the Beneficiaries' "intimat[ion] that they relied on the Register in Chancery,"[8] but, nonetheless, asserts that this contact with the Register in Chancery is not consequential.[9] In other words, even if the Beneficiaries were advised by the Register in Chancery to use the eleven-day deadline of new Rule 144(d)(1), the Trustee contends that advice does not excuse their missing the deadline for the filing of exceptions to the Final Report.

But, in this Court, the untimely filing of a notice of appeal is a jurisdictional defect. It can only be excused if the untimely filing is attributable to court personnel.[10] Accordingly, if our Court personnel caused a notice of appeal to be untimely, the appeal would be accepted.

This rationale applies by analogy to a finding of excusable neglect, attributable to court personnel, for the untimely filing of exceptions to a Master's report in the Court of Chancery. This is an independent reason to reverse the Court of Chancery's decision that the Beneficiaries' notice of exceptions was untimely filed. It provides an independent, alternative basis for a remand to consider the merits of the Beneficiaries' exceptions to the Spendthrift Ruling.[11]

---

[8] Appellee's Answering Br. at 12 n.7.

[9] In fairness to the Court of Chancery and the other party, the Beneficiaries should have attached an affidavit supporting this assertion and identifying when and with whom this conversation with the Register in Chancery occurred.

[10] *Bey v. State*, 402 A.2d 362 (1979).

[11] *See Brennan v. Brennan*, 901 A.2d 119 (Del. 2006) (TABLE) (reversing decision below where

11

## *Conclusion*

The Court of Chancery erred by failing to address the Beneficiaries' two meritorious arguments that any untimeliness was the result of excusable neglect: first, the course of conduct by the Master and the parties reasonably led them to believe the case was no longer expedited; and, second, that Court of Chancery personnel contributed to their untimely filing.

This matter is remanded to the Court of Chancery to consider the merits of the Beneficiaries' exceptions to the Spendthrift Ruling. Jurisdiction is retained to consider that decision on the exceptions and the other remaining issues on appeal, following the return from remand. We impose no specific time period for the Court of Chancery to act, recognizing that this matter involves issues important to the parties, is no longer expedited, and that briefing before the Court of Chancery should occur before its ruling, and trusting the Court of Chancery to address the case with its usual concern for promptness.

---

trial court did not determine whether there had been excusable neglect).

12