# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | ID No. 1310017689 |
| | ) | |
| QUENTIN CANNON, | ) | |
| | ) | |
| Defendant. | ) | |

*Upon Defendant Quentin Cannon's Motion for Postconviction Relief:*
**DENIED.**

Andrew J. Vella, Esq., Deputy Attorney General, Attorney for the State of Delaware.

Natalie S. Woloshin, Esq., Woloshin, Lynch & Associates, P.A., Attorney for Defendant.

**Rennie, J.**

## OPINION

Before the Court is Defendant Quentin Cannon's ("Defendant") petition seeking postconviction relief. Upon consideration of Defendant's Motion for Postconviction Relief (the "Motion"),[1] and appendix attached thereto,[2] the State's Response to the Motion,[3] Defendant's Reply,[4] Superior Court Criminal Rule 61, applicable decisional law, and the entire record in this case, the Motion is **DENIED** for the reasons set forth below.

---

[1] Defendant's Motion for Postconviction Relief ("Mot.") (D.I. 60).
[2] Appendix for Motion for Postconviction Relief (hereinafter cited as "A____") (D.I. 61).
[3] State's Response to Motion for Postconviction Relief (D.I. 70).
[4] Defendant's Reply in Support of Postconviction Relief (D.I. 72).

## I. GENERAL BACKGROUND[5]

On the evening of October 9, 2013, Defendant was at the house of his friend, Carlton Castillo ("Castillo").[6] Castillo's two roommates were also home at the time.[7] Defendant was with Castillo in the basement but left the residence for a while. Approximately ten to fifteen minutes after Defendant returned, two of Defendant's co-conspirators, one named Darrell Tyson ("Tyson"), entered the house. Tyson headed directly into the basement, pointed a gun at Castillo, and told him to "give it up." After a tussle between Castillo and Tyson, Castillo successfully subdued Tyson, with help from his two roommates. Tyson was thereafter taken into custody by the New Castle County Police. Cannon fled the residence at some point during the altercation. The victims of the home invasion reported that a large amount of cash had been taken from their residence.

Later in the night, the police pulled over a blue 1998 Mercury Marquis in close proximity to the house in question, which was identified by a subject in the house as the vehicle that left the scene of the home invasion. Defendant was in the backseat of that vehicle. The police found a cell phone and approximately $2,520 in cash on

---

[5] This section of the Opinion provides general background information surrounding the underlying incident and proceedings leading up to Defendant's conviction. Facts relevant to a specific claim in the Motion will be articulated when that particular claim is discussed in the Opinion.

[6] The facts surrounding the underlying crimes committed by Defendant are largely drawn from the Delaware Supreme Court's Order. *See Cannon v. State*, 126 A.3d 641 (Table), 2015 WL 6280776 (Del. Supr. Oct. 20, 2015). For a more detailed recitation of those facts, please refer directly to that Order.

[7] Also at home at the time in question were the children of one of Castillo's roommates.

2

Defendant's person. During a search of the car, the police also found Tyson's cell phone and $1,637 behind the backseat, for which no one in the car claimed ownership.

The police, after securing a search warrant, conducted a forensic examination of the cell phones recovered, and found an exchange of text messages between Defendant and Tyson that discussed and planned the details of the home invasion. Specifically, Defendant conveyed information about money at the residence. Defendant also told Tyson the identity of the persons at the residence that night, and where each person was located. Tyson asked Defendant whether there was any firearms within the residence, and advised Defendant of his intention to use a gun. Defendant further instructed Tyson to "make them face the floor" when he entered the basement.

Defendant's trial was originally scheduled to start on June 10, 2014.[8] It was later continued to August 5, 2014, because one of the State's key witnesses failed to appear for court.[9] After a 4-day jury trial, Defendant was convicted of Attempted Robbery First Degree, Burglary First Degree, Assault Second Degree, Conspiracy Second Degree, and two counts of Possession of a Firearm During the Commission of a Felony.[10] Defendant was sentenced to 19 years at Level V incarceration

[8] D.I. 4.
[9] D.Is. 25, 28.
[10] D.I. 32.

3

followed by Level IV and Level III time.[11] Defendant filed a Notice of Appeal.[12] On November 12, 2015, the Delaware Supreme Court issued a mandate affirming Defendant's conviction.[13]

On November 18, 2016, Defendant filed a *pro se* Motion for Postconviction Relief.[14] Counsel was later appointed to represent Defendant in his Rule 61 proceeding, and an Amended Motion for Postconviction Relief (the "Motion") was filed on January 22, 2018.[15] In the Motion, Defendant argues ineffective assistance of counsel and prosecutorial misconduct. The Court conducted an evidentiary hearing on this matter on April 8, 2019.[16] After consideration of the parties' briefs, and testimony and documentary evidence received at the hearing, the Court hereby denies the Motion.

## II. PROCEDURAL BARS

Before addressing the merits of any claim for postconviction relief, the Court must first determine whether any of the procedural bars set forth in Superior Court Criminal Rule 61(i) are applicable.[17] A motion for postconviction relief could be precluded based on time limitations, repetition, procedural defaults, and former

---

[11] Sentencing Order (D.I. 34).
[12] D.I. 35.
[13] D.I. 43.
[14] D.I. 47.
[15] D.I. 60.
[16] D.I. 79 ("Hearing Transcript").
[17] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

4

adjudications.[18] "To protect the procedural integrity of Delaware's rules, the Court will not consider the merits of a post-conviction claim that fails *any* of Rule 61's procedural requirements."[19]

The State contends that Defendant's Motion is time-barred.[20] Rule 61(i)(1) explicitly provides that a motion for postconviction relief may not be filed more than one year after the judgment of conviction becomes final.[21] If a defendant files a direct appeal, as Defendant did here, the judgment of conviction becomes final when the Delaware Supreme Court issues a mandate or order finally determining the case on direct review.[22] The State contends that Defendant's conviction became final for Rule 61 purposes when the Delaware Supreme Court issued its mandate on November 12, 2015, and that Defendant's *pro se* Motion, which was filed on November 18, 2016, was beyond the one-year time limitation. Defendant contends that the Motion is not time-barred because the delay in filing was caused not by him, but by court personnel. The Court agrees with Defendant and finds that the Motion is not barred by the one-year time limitation.

---

[18] Super. Ct. Crim. R. 61(i)(1)-(4).

[19] *State v. Page*, 2009 WL 1141738, at *3 (Del. Super. Apr. 28, 2009) (emphasis added) (internal citations omitted).

[20] The State also contends that Defendant's claims of prosecutorial misconduct are barred, under Rule 61(i)(3), for procedural defaults. The Court will address this argument later in the Opinion, when it discusses the claims of prosecutorial misconduct.

[21] Super. Ct. Crim. R. 61(i)(1).

[22] Super. Ct. Crim. R. 61(m)(2).

The Delaware Supreme Court has held that an untimely filing may be excused when a defendant "did all that was required of him in seeking review," and "his default has been occasioned by court related personnel."[23] In this case, the docket reflects the filing of two mandates from the Delaware Supreme Court. The first mandate, docketed on November 12, 2015, pertains to Defendant's case.[24] The second mandate, docketed on November 25, 2015, pertains to an entirely different case.[25] Thus, if calculated from the date of the second mandate, Defendant's Motion would have been deemed timely. However, the docket fails to indicate that the second mandate does not pertain to Defendant's case. Therefore, in looking at the docket, it was reasonable for Defendant to have believed that the second mandate constituted the final determination of the Delaware Supreme Court and triggered the one-year time period for filing his Rule 61 Motion. The docket is controlled by the Court, and the docketing mistake was made by court personnel. Any apparent delay in filing of Defendant's Motion is due to an error on the part of court personnel, and thus should not bar Defendant's Motion.

---

[23] *Bey v. State*, 402 A.2d 362, 363 (Del. 1979).
[24] D.I. 43.
[25] D.I. 45.

6

# III. INEFFECTIVE ASSISTANCE OF COUNSEL

The Court now addresses Defendant's claims of ineffective assistance of counsel. Defendant raises four claims of ineffective assistance of counsel: (1) failure to provide him with the State's key evidence against him prior to his rejection of the State's plea offers; (2) failure to file a motion to suppress the search of his and his co-defendant, Tyson's, cell phone records; (3) failure to file a motion to compel; and (4) failure to raise meritorious claims on appeal.

To prevail on a claim of ineffective assistance of counsel, a defendant must first show "counsel's representation fell below an objective standard of reasonableness."[26] A defendant bears a very heavy burden when trying to establish this deficiency, because, in order to eliminate "the distorting effects of hindsight," "there is a strong presumption that trial counsel's representation was professionally reasonable."[27] The defendant must show that the counsel was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment.[28] In addition to objective unreasonableness in counsel's representation, the defendant must demonstrate actual prejudice, defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

---

[26] *Strickland v. Washington*, 466 U.S. 668, 688 (1984).
[27] *Hoskins v. State*, 102 A.3d 724, 730 (Del. 2014) (internal citations omitted).
[28] *Id.* (internal citation omitted).

different."[29] A defendant must "make specific allegations of actual prejudice and substantiate them."[30] Notably, the Court need not determine whether the counsel's performance was deficient before it examines the prejudice suffered by the defendant, if it is clear that the defendant makes an insufficient showing of the latter.[31]

## A. Failure to Advise of Incriminating Evidence Prior to Plea Negotiations

Defendant's first ineffectiveness claim alleges that his trial counsel was deficient in plea negotiations. On June 9, 2014, the day of the final case review, the State extended its first plea offer, which Defendant rejected.[32] The second plea offer was extended on June 10, 2014, and the final, and the best, offer was extended on June 11, 2014. Defendant also rejected those offers.[33] Defendant contends that his attorney failed to review with him key incriminating evidence, and had trial counsel advised him of the evidence against him, he would have accepted the State's plea offer. The evidence that Defendant contends is critical to his plea negotiations is the exchange of text messages, between Defendant and Tyson, orchestrating the home invasion.

---

[29] *Strickland*, 466 U.S. at 694.
[30] *Hoskins*, 102 A.3d at 730 (internal citation omitted).
[31] *Strickland*, at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which [][] will often be so, that course should be followed.").
[32] A024–026.
[33] A037, 083.

Defendant and his trial attorney have provided diametrically conflicting testimony on the issue of whether the trial counsel reviewed those text messages with Defendant prior to the plea negotiations. It is undisputed that the trial attorney received the State's discovery, including the incriminating text messages, on June 4, 2014. During the evidentiary hearing, Defendant testified that his attorney failed to review the evidence with him, and that he did not know the contents of the evidence until June 16, 2014, five days after the final plea offer expired, when his attorney sent him a copy of the evidence.[34] The trial attorney, to the contrary, testified that he reviewed the cell phone records with Defendant on June 8, 2014, the night before the first plea offer was rendered. Trial counsel further testified that Defendant was aware of the contents of those records and what the State's case was going to be.[35]

The Court finds it unnecessary to determine whether Defendant's attorney did actually review the cell phone records with Defendant on June 8, 2014, because even if he did not, there was no actual prejudice suffered by Defendant. In fact, Defendant became aware of the State's intention to use the cell phone records and their contents at least before the State extended its final plea offer, as shown by his own testimony. On June 10, 2014, Defendant, through his attorney, filed a motion in limine to exclude the cell phone records.[36] Defendant testified that he was aware of the subject

---

[34] Hearing Transcript at 106–07.
[35] *Id.* at 44, 80–81.
[36] A029–033.

of the motion, which was text messages between he, Tyson, and Castillo,[37] but denies that he knew the contents of those messages at the time.[38] Defendant's denial of knowledge of the contents of the text messages is belied by the fact that Defendant himself is the author of those messages. Throughout Defendant's case, he never challenged the authenticity of the text messages, nor has he alleged that they were not sent by him. Thus, if Defendant knew that the State had text messages between he and Tyson as evidence against him, he must have known the contents of those messages, and the significance of the evidence, at that time.

The rest of the record also contradicts Defendant's contention that he did not know the contents of the cell phone records. On June 10, 2014, Defendant's attorney advised the Court that he had discussed the cell phone records with Defendant.[39] Further, the attorney outlined on the record the nature of the incriminating text messages between Defendant and Tyson. Specifically, the attorney stated that the text messages suggest that Defendant "was there sort of scouting things out" by "relaying information [to his co-defendant] about what was and what wasn't in the home that was invaded."[40] The trial attorney also acknowledged that the cell phone

---

[37] Hearing Transcript at 106 (When asked what information he had in order to make a decision on the final plea offer, extended on June 11, 2014, Defendant stated "[b]asically the motion in limine." He added that "[t]he only evidence I had was [] text messages against me or that my codefendant text my phone.").
[38] *Id.* at 106–07.
[39] A037.
[40] A038.

records constitute the core evidence upon which the State's case against Defendant was predicated.[41] Notably, Defendant was in the courtroom when his attorney made these statements. Therefore, Defendant should at least have become aware of the nature of the cell phone records on June 10, 2014.[42]

Defendant, both in the Motion and at the evidentiary hearing, focused on the statements made by his trial attorney to the Court that the State's discovery was provided at such a late time that there had been only "a limited opportunity" and "a very brief period of time" the attorney had to go over the evidence with Defendant.[43] The Court finds that, although the entire cell phone extraction report is comprised of more than 4,000 pages of documents, only 27 pages of the documents contain the incriminating text messages. It is true that Defendant's attorney received the 27 pages only a couple days prior to the plea negotiations started, but those text messages are plain evidence and self-explanatory on their face, and it would not have taken a tremendous amount of time for Defendant's attorney to analyze them and explain them to Defendant. Moreover, based on the above discussion, even if the trial attorney failed to reveal the contents of the cell phone evidence to Defendant before the plea negotiations started, it is clear from the record that Defendant became

[41] *Id.*

[42] Defendant could make the argument that he, although having heard his attorney's comments regarding the cell phone records, did not understand those statements. However, even if that was the case, he could have inquired about the evidence from his attorney afterwards. No evidence shows that he did that either.

[43] Mot. at 6–7.

11

aware of the contents at least before the final plea offer was extended. Defendant voluntarily chose to reject that offer. Thus, he did not and could not have suffered actual prejudice from his attorney's alleged failure to advise him of incriminating evidence. Therefore, Defendant's first ineffectiveness claim must fail.

## B. Failure to Move to Suppress Search of Cell Phone Records

Defendant's second ineffectiveness claim is that his trial counsel was deficient by failing to move to suppress the search of his and Tyson's cell phone records. It is well-established that unreasonable searches and seizures are prohibited by law. Under both the U.S. and Delaware Constitutions, a search warrant may only be issued upon a showing of *probable cause*, and the warrant must describe with *particularity* the places to be searched and the things or persons to be seized.[44] Defendant contends that the warrant in this case authorizing search of the cell phones is invalid because it lacks both probable cause and particularity.

An affidavit in support of a search warrant establishes probable cause to search by showing that there is a logical nexus between the items sought and the place to be searched.[45] In other words, the affidavit must, within the four corners of the document, contain adequate facts to allow an issuing magistrate to form a reasonable belief that an offense has been committed and that the evidence of that

---

[44] U.S. Const. Amend. IV; Del. Const. art. I, § 6.
[45] *State v. Adams*, 13 A.3d 1162, 1173 (Del. Super. 2008) (internal citation omitted).

12

offense will be found in that particular place.[46] A determination of probable cause requires an inquiry into the "totality of the circumstances" alleged in the affidavit.[47] Here, Defendant contends that the affidavit in support of the search warrant contains insufficient information to establish probable cause that evidence of the home invasion would be found in his cell phone. Specifically, Defendant asserts that the affidavit only contains information that he owned and possessed a cell phone at the time the car in which he was a passenger was pulled over by the police. Defendant contends that mere ownership and possession, on its own, does not constitute "adequate facts" to warrant an inference that evidence of the home invasion would be found in the cell phone.

The factual predicate for Defendant's argument is incomplete. The affidavit described in detail the circumstances under which Defendant's cell phone was seized by the police. Defendant was in the victim's house before the home invasion occurred but fled the scene during the crime. Right after the incident, Defendant was found in a car identified as the getaway vehicle in close proximity to the scene of the home invasion. When found, Defendant was in possession of a large amount of cash, which was alleged to have been taken during the home invasion. As to Defendant's cell phone, it was discovered during a search of the getaway vehicle,

---

[46] *Id.* at 1172 (internal citation omitted).
[47] *Sisson v. State*, 903 A.2d 288, 296 (Del. 2006).

13

where the police also found the cell phone of a co-defendant. Although he denied using the cell phone to facilitate the crime, Defendant admitted that he used the cell phone to contact the victim after he fled the scene. Defendant argues that the mere ownership and possession of the cell phone does not constitute probable cause. However, as discussed above, the supporting affidavit contains facts far more than mere ownership or possession. Therefore, considering the totality of the circumstances, the issuing magistrate reasonably believed that incriminating evidence would be located on Defendant's cell phone, and therefore properly found that probable cause existed to search the cell phone.

Defendant next contends that, even if probable cause was established, the search warrant was a general warrant that failed to describe the data to be searched with constitutionally-required particularity. This argument also fails. Although the particularity requirement is a long-standing concept rooted in the U.S. and Delaware Constitutions, the Delaware Supreme Court had not directly addressed a challenge to search warrants directed to digital items on the ground of lack of sufficient particularity until 2016, in *Wheeler v. State*.[48] While confirming that the particularity requirement is equally applicable to digital items as to physical objects, for the manifest purpose of preventing wide-ranging exploratory searches, the *Wheeler*

---

[48] 135 A.3d 282 (Del. 2016). The *Wheeler* case noted that warrants directed to digital information "present unique challenges in satisfying the particularity requirement, given the unprecedented volume of private information" stored in digital devices. *Id.* at 299.

14

Court acknowledged the importance of balancing private interests and unrestrained searches against the legitimate efforts in investigating criminal activities and the propensity of criminals to hide or disguise files.[49] Accordingly, the *Wheeler* Court declined to specify restrictive search protocols, but rather provided the general principle that, in order to satisfy the particularity requirement, a warrant must describe the information to be searched with as much specificity as "the circumstances reasonably allow."[50]

The search warrant in this case authorized the search of "[a] White Apple Iphone, . . ., any and all voice messages, recorded oral communications contained within the electronic storage devices listed above, specifically for call logs, SMS (text) messages, MMS (media) messages as well as images and/or videos."[51] Because the time frame relevant to the home invasion was available to the investigating officers, and was not included in the search warrant, the warrant arguably violated the particularity test set forth in *Wheeler*. However, an unignorable fact is that *Wheeler* was decided two years *after* Defendant's conviction. Failure to move to suppress the search warrant under *Wheeler* could thus not be deemed as ineffective representation by Defendant's trial attorney. Defendant argues that his attorney was deficient even in light of the case law that did exist at

---

[49] *Id.* at 299–301.
[50] *Id.* at 304–05.
[51] A300.

the time, citing *Starkey v. State*.[52] This argument is misplaced. *Starkey* discussed a search warrant directed to "any and all data stored [in a cell phone], to include but not limited to registry entries, pictures, photographs, images, audio/visual recordings, . . ., any other information/data *pertinent to this investigation* within said scope."[53] The *Starkey* Court found that the warrant did not lack particularity because the "pertinent to this investigation" language effectively limited the scope of the search.[54]

Defendant argues that, because the search warrant in this case did not include the similar "pertinent to" language, it fails to satisfy the particularity requirement. Defendant's interpretation of the *Starkey* holding is overboard. Although finding that the warrant was valid with the "pertinent to" language, the *Starkey* Court has not held that the language somehow constitutes the "magic words" that every valid search warrant must include. In fact, the *Starkey* Court merely analyzed a specific search warrant under the specific circumstances of that case. It did not reach a universal conclusion that must be followed by the subsequent courts; nor did it in a general sense address the permissible scope of warrants seeking digital information. Hence, although Defendant's trial counsel could have arguably relied upon *Starkey*

---

[52] 74 A.3d 655 (Table), 2013 WL 4858988 (Del. Supr. Sept. 10, 2013).
[53] *Id.* at *4 (emphasis added).
[54] *Id.*

16

to make the case for a motion to suppress, his failure to do so could hardly be seen as falling below an objective standard of reasonableness.

Importantly, Defendant's trial counsel did review the Affidavit of Probable Cause in support of the search warrant and ultimately exercised his "good faith belief that had a suppression motion been filed challenging the probable cause for the search of Cannon's cell phone, it would have been denied."[55]

While it is easy to serve as a Monday Morning Quarterback in considering whether trial counsel should have nonetheless filed a motion to suppress the search results for Defendant's cell phone, the Court must employ considerable deference to trial counsel's considered decision not to do so. This Court is mindful of the United States Supreme Court's admonition in *Strickland* that:

> "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."[56]

Defendant in this case has failed to overcome that presumption.

In addition, even if trial counsel sought and was granted relief on a motion to suppress the text messages between Defendant and his co-conspirators, there was

---

[55] Revised Affidavit of Trial Counsel at 5.
[56] *Strickland,* 466 U.S. at 690.

17

sufficient other evidence presented at trial for a jury to have found Defendant guilty. Specifically, evidence was adduced at trial that Defendant remained in the same room where his co-conspirator pistol-whipped the victim. Thereafter, Defendant fled in a getaway car with another co-conspirator. The police eventually stopped the getaway car and found Defendant in the backseat. A portion of the money stolen from the home invasion was located in the car and the remainder on Defendant's person. Hence, Defendant has failed to establish the requisite prejudice, because there was more than ample evidence by which a jury could have returned a conviction against him without the introduction of the text messages. Therefore, Defendant's second ineffectiveness claim fails.

## C. Failure to File a Motion to Compel

Defendant also contends that his trial attorney was ineffective by failing to move to compel discovery. He asserts that, if his attorney filed a motion to compel, he would have received the discovery, especially those incriminating text messages, at an earlier time, and he would have made an informed decision on those plea offers. This argument is misplaced. The Court has already found that, prior to the final, and most favorable, plea offer was extended, Defendant had already become aware that the State was going to use those text messages against him. Thus, even if Defendant can demonstrate that his attorney was ineffective by failing to compel discovery,

18

there is no actual prejudice suffered by him as a result of such deficiency. The third ineffectiveness claim also fails.

## D. Failure to Raise Meritorious Claims on Appeal

Finally, Defendant contends that his appellate attorney[57] rendered ineffective representation by omitting meritorious claims on appeal. Specifically, Defendant asserts that the attorney should have raised claims of prosecutorial misconduct, including the State's delay in providing discovery and making improper and irrelevant remarks during the trial about children that resided in the victim's house during the home invasion. This argument fails, because the alleged omitted issues, even if raised on appeal, have no merit and would not have changed the result of the appeal.[58]

Defendant contends that the State's late production of the cell phone records, which occurred only eight days before the original trial date, amounted to prosecutorial misconduct, and his appellate attorney's failure to raise it on appeal amounted to ineffective assistance of counsel. Defendant is mistaken. As this Court has previously found several times in this Opinion, even if the State's late production

---

[57] The Delaware Supreme Court has held that "[a] defendant's right to effective assistance of counsel extends to his appeal." *Ploof v. State*, 75 A.3d 811, 831 (Del. 2013) (internal citations omitted). The *Strickland* test, although originally developed to evaluate trial counsel' performance, is also applicable to determine whether appellate counsel's performance is effective. *Id.* (internal citations omitted). In this case, Defendant was represented by the same attorney both at trial and on appeal.

[58] Those omitted issues would be subject to a more stringent plain error review on appeal, because they were not raised in the proceedings leading to Defendant's conviction.

19

of evidence was prosecutorial misconduct, Defendant cannot identify any specific prejudice that he suffered. By the time the final plea offer was extended, Defendant had already become aware of the contents of the incriminating evidence and its significance. Therefore, even if his appellate attorney raised this alleged late production on appeal, the result of the appeal would not have been different.

When Defendant and his co-conspirators committed the home invasion, the children of one of the victims were also present in the home. Defendant contends that the mention by the State of children being present in the home during trial amounted to prosecutorial misconduct, and his attorney was deficient by failing to appeal this issue. This argument is unfounded. Whether or not the remarks about the children are relevant evidence, and whether or not the State committed prosecutorial misconduct by making them, there is no evidence showing that the jury's final verdict was affected by those remarks. The Delaware Supreme Court, in its Order affirming Defendant's conviction, found that there was ample evidence in this case upon which a reasonable fact finder could have found Defendant guilty of the charged crimes. Defendant, in his Motion, claims that those remarks about the children were "highly prejudicial," but he does not demonstrate, or even claim, that the ultimate jury verdict was distorted by the "passions and emotions" inflamed by those remarks, and was not based on the ample evidence that had been established at trial. Therefore, there is not a reasonable probability that his conviction would

20

have been reversed even if his attorney raised the issue of alleged improper prosecution statements on appeal. Defendant's ineffectiveness claim regarding appellate counsel's failure to raise meritorious claims is thus without merit.

## IV. PROSECUTORIAL MISCONDUCT

In addition to ineffective assistance of counsel claims, Defendant also contends that he is entitled to postconviction relief, based on an independent analysis of alleged prosecutorial misconduct. The prosecutorial misconduct Defendant alleges here refers to the same set of facts that was discussed above in association with the Court's analysis of Defendant's last ineffective assistance of counsel claim, i.e., late production of discovery and improper remarks made at trial. The Court finds it unnecessary to address the merits of the prosecutorial misconduct claim in Defendant's Motion, because it is procedurally barred under Rule 61(i)(3).

Rule 61(i)(3) explicitly precludes any ground for postconviction relief that "was not asserted in the proceedings leading to the judgment of conviction," unless the movant shows (1) "[c]ause for relief from the procedural default," and (2) "[p]rejudice from violation of the movant's rights."[59] It is undisputed that the issue of prosecutorial misconduct was not raised in the proceedings leading to Defendant's conviction. Defendant, however, contends that he has cause for relief from the procedural default, because his appellate attorney unreasonably failed to raise these

---

[59] Super. Ct. Crim. R. 61(i)(3).

21

claims on appeal. He argues that this amounted to ineffective assistance of counsel, and that he suffered prejudice from such deficient performance of his attorney.

Defendant's argument is again misplaced. In order to cure the procedural default under Rule 61(i)(3), merely *alleging* ineffective assistance of counsel for failure to raise those claims is not enough. A defendant must actually *demonstrate* that his counsel's failure to pursue a specific claim is "so egregious as to constitute ineffective assistance [of counsel] under the Sixth Amendment."[60] Here, although Defendant has *raised* the ineffective assistance of counsel claim in the Motion regarding his attorney's failure to appeal prosecutorial misconduct issues, the Court has already concluded that Defendant fails to actually *prove* that claim. Therefore, Defendant does not overcome this procedural bar, and his prosecutorial misconduct claim must be summarily dismissed.

## V. CONCLUSION

Based on the foregoing discussion, Defendant's Motion for Postconviction Relief is hereby **DENIED**.

**IT IS SO ORDERED THIS 9th day of July 2019.**

Sheldon K. Rennie, Judge

---

[60] *Shelton v. State*, 744 A.2d 465, 475 (Del. 2000) (internal citations omitted) ("Attorney error which falls short of ineffective assistance of counsel does not constitute cause for relief from a procedural default.").